1   **BUCKLEY LLP**
    LAUREN L. ERKER (State Bar No. 291019)
2   lerker@buckleyfirm.com
    201 Mission Street, 12th Floor
3   San Francisco, CA 94105
    Telephone: (415) 619-3500
4   Facsimile: (415) 619-3505

5   VALERIE L. HLETKO (*pro hac vice* pending)
    vhletko@buckleyfirm.com
6   2001 M Street NW, Suite 500
    Washington, DC 20036
7   Telephone: (202) 349-8054
    Facsimile: (202) 349-8080

8
    SCOTT T. SAKIYAMA (*pro hac vice* pending)
9   ssakiyama@buckleyfirm.com
    353 N Clark Street, Suite 3600
10  Chicago, IL 60654
    Telephone: (312) 924-9893
11  Facsimile: (312) 924-9899

12  Attorneys for Defendant Arvest Central Mortgage
    Company

13

14

15              **UNITED STATES DISTRICT COURT**

16             **NORTHERN DISTRICT OF CALIFORNIA**

17               **SAN FRANCISCO DIVISION**

18

19  **VALERIE LEMBECK**, *on behalf of herself*      Case No. 3:20-cv-03277-VC
    *and all others similarly situated,*
20                                                   **DEFENDANT ARVEST CENTRAL**
                    Plaintiff,                       **MORTGAGE COMPANY'S MOTION TO**
21                                                   **DISMISS**
           v.
22                                                   **Honorable Vince Chhabria**
                                                     **Date: October 1, 2020**
23  **ARVEST CENTRAL MORTGAGE CO.,**                 **Time: 10:00 a.m.**
                                                     **Ctrm: 4**
24                  Defendant.
                                                     **Complaint Filed:  May 14, 2020**
25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 1, 2020, at 10:00 a.m., or as soon thereafter as the matter may be heard in the U.S. District Court, Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, in Courtroom 4 before the Honorable Vince Chhabria, Defendant Arvest Central Mortgage Company ("Arvest") will move the Court to dismiss the claims in the Complaint with prejudice for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

Arvest Central Mortgage Company seeks to dismiss Plaintiff's claims based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Theresa L. Maxwell, and all pleadings and papers on file in this action, and on such other written and oral argument as may be presented to the Court.

DATED:  August 10, 2020                    BUCKLEY LLP


By:  _____/s Lauren L. Erker_____
     Valerie L. Hletko (*Pro Hac Vice Pending*)
     Scott T. Sakiyama (*Pro Hac Vice Pending*)
     Lauren L. Erker

     Attorneys for Defendant Arvest Central Mortgage
     Company

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 3

LEGAL STANDARD .......................................................................................................... 5

ARGUMENT ....................................................................................................................... 5

I.     Plaintiff Agreed to Pay the IVR Fee. ...................................................................... 5

II.    Plaintiff Fails to State a Rosenthal Act Claim. ....................................................... 6

   A.    Plaintiff Cannot Predicate Her Rosenthal Act Claim on a Violation of the FDCPA. ........... 6

      1.    The IVR Fee Is Not a Debt or Incidental to the Debt. ........................... 6

      2.    The FDCPA Does Not Prohibit Arvest's Assessment of the IVR Fee. ............. 8

      3.    Arvest Is Not a "Debt Collector" Under the FDCPA ........................... 10

   B.    Plaintiff's Rosenthal Act Claim Fails for Additional Reasons. .......................... 10

      1.    Plaintiff Fails Plausibly to Allege That Arvest Is a "Debt Collector." ............ 11

      2.    The IVR Fee Does Not Violate § 1788.14(b). ................................. 11

      3.    Plaintiff Does Not Identify Any Misrepresentation in Violation of § 1788.13(e). ......... 12

III.   Plaintiff Fails to State a UCL Claim. ..................................................................... 13

IV.    Plaintiff Fails to State a Breach of Contract Claim Based on the Deed of Trust ................. 14

V.     Plaintiff Fails to State an Unjust Enrichment Claim ............................................. 14

VI.    Plaintiff's Claims Are Barred by the Voluntary Payment Doctrine. ..................... 15

CONCLUSION ................................................................................................................... 15

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Am. Oil Serv. v. Hope Oil Co.*,
    194 Cal. App. 2d 581 (1961)...................................................................................................15

5

*Anderson v. Ocwen Loan Servicing, LLC*,
    No. 2:15-CV-05124-SVW-AGR, 2016 WL 11518592 (C.D. Cal. Feb. 24, 2016)...................11

6

*Arizona Elec. Power Co-op., Inc. v. U.S.*,
    816 F.2d 1366 (9th Cir. 1987)...................................................................................................9

7

8

*Artichoke Joe's Cal. Grand Casino v. Norton*,
    353 F.3d 712 (9th Cir. 2003)................................................................................................8, 9

9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................5

10

11

*Astiana v. Hain Celestial Group, Inc.*,
    783 F.3d 753 (9th Cir. 2015)..............................................................................................14, 15

12

*Barlow Respiratory Hosp. v. CareFirst of Maryland, Inc.*,
    No. CV-14-01335-MWF(SSX), 2014 WL 12573394 (C.D. Cal. June 24, 2014)......................4

13

14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................5

15

*Berryman v. Merit Prop. Mgmt., Inc.*,
    152 Cal. App. 4th 1544 (2007)...............................................................................................13

16

17

*Brodsky v. Apple Inc.*,
    No. 19-CV-00712-LHK, 2020 WL 1694363 (N.D. Cal. Apr. 7, 2020).............................14, 15

18

*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010)..................................................................................................3

19

20

*Denison v. Citifinancial Servicing LLC*,
    No. C 16-00432 WHA, 2016 WL 1718220 (N.D. Cal. Apr. 29, 2016) ....................................11

21

*Estate of Derrick Campbell v. Ocwen Loan Servicing, LLC*,
    No. 20-cv-80057-SINGHAL (S.D. Fla. Apr. 30, 2020), ECF No. 30 ...................................6, 7

22

23

*Donohue v. Apple, Inc.*,
    871 F.Supp.2d 913 (N.D. Cal. 2012) ......................................................................................14

24

*Duffee v. Collecto, Inc.*,
    No. 3-12-CV-0187-B, 2012 WL 652228 (N.D. Tex. Feb. 8, 2012)...........................................8

25

26

*Flores v. Collection Consultants of California*,
    No. SA CV 14-0771-DOC, 2015 WL 4254032 (C.D. Cal. Mar. 20, 2015)...............................7

27

28

*Graham v. VCA Animal Hosps., Inc.*,
    729 F. App'x 537 (9th Cir. 2018)...................................................................................13

*Kemp v. Wells Fargo Bank, N.A.*,
    No. 17-cv-01259-MEJ, 2017 WL 4805567 (N.D. Cal. Oct. 25, 2017)........................10

*Ketterman v. I.C. Sys., Inc.*,
    No. 4:18 CV 1136 CDP, 2019 WL 3777635 (E.D. Mo. Aug. 12, 2019).......................8

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005)........................................................................................4

*Lee v. Main Accounts, Inc.*,
    No. 96-3922, 1997 WL 618803 (6th Cir. Oct. 6, 1997)..................................................8

*Lee v. Ticketmaster L.L.C.*,
    No. 19-15673, 2020 WL 3124256 (9th Cir. June 12, 2020) ..........................................5

*Lewis v. ACB Bus. Servs., Inc.*,
    911 F. Supp. 290 (S.D. Ohio 1996), *order aff'd*, 135 F.3d 389 (6th Cir. 1998) ........8

*Lit'l Pepper Gourmet, Inc. v. Airgas USA, LLC*,
    No. 19CV837-LAB (AGS), 2019 WL 6218780 (S.D. Cal. Nov. 21, 2019) ...............13

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)........................................................................................................6

*Magno v. Experian Info. Sols., Inc.*,
    Case No. C17-5478, 2018 WL 2984979 (W.D. Wash. June 14, 2018) .........................5

*Marcotte v. Gen. Elec. Capital Servs., Inc.*,
    709 F. Supp. 2d 994 (S.D. Cal. 2010) .........................................................................12

*McNamara v. Wells Fargo Bank*,
    No. CV-18-2131-MWF, 2018 WL 6137599 (C.D. Cal. May 22, 2018)......................10

*Meintzinger v. Sortis Holdings, Inc.*,
    18-CV-2042 (BMC), 2019 WL 1471338 (E.D.N.Y. Apr. 3, 2019)...............................8

*Navarro v. Sears Life Ins. Co.*,
    No. 2:08-cv-00527-GEB-EFB, 2008 WL 3863451 (E.D. Cal. Aug. 18, 2008)............4

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014)........................................................................................5

*Oya v. Wells Fargo Bank, N.A.*,
    No. 3:18-cv-01999, 2019 WL 3239021 (S.D. Cal. July 17, 2019) .............................10

*Parino v. BidRack, Inc.*,
    838 F. Supp. 2d 900 (N.D. Cal. Sep. 26, 2011) ..........................................................15

*Parker v. Peters and Freedman, LLP*,
    No. 8:17-cv-00667-JLS-DFM, 2017 WL 10525820 (C.D. Cal. Jul. 10, 2017) ..........11

TABLE OF AUTHORITIES

*Reid v. Ocwen Loan Servicing, LLC*,
   No. 20-cv-80130-SINGHAL (S.D. Fla. May 4, 2020), ECF No. 31 ..........................................7

*Riggs v. Prober & Raphael*,
   681 F.3d 1097 (9th Cir. 2012)......................................................................................12

*Steinman v. Malamed*,
   185 Cal. App. 4th 1550 (2010)......................................................................................15

*Torliatt v. Ocwen Loan Servicing, LLC*,
   No. 19-CV-04303-WHO, 2020 WL 1904596 (N.D. Cal. Apr. 17, 2020) ...........................9, 14

*Turner v. PHH Mortgage Corp.*,
   No. 8:20-cv-137-T-30SPF, 2020 WL 2517927 (M.D. Fla. Feb. 24, 2020) ..............................8

*Waddell v. U.S. Bank Nat'l Ass'n*,
   395 F. Supp. 3d 676 (E.D.N.C. 2019)............................................................................12

*Wittman v. CB1, Inc.*,
   No. CV-15-105-BLG-SPW-CSO, 2016 WL 1411348, at *4-5 (D. Mont. Apr. 8,
   2016)...............................................................................................................................7

**Statutes**

15 U.S.C. § 1692(e)...........................................................................................................9

15 U.S.C. § 1692a(5)..........................................................................................................6

15 U.S.C. § 1692a(6)........................................................................................................10

15 U.S.C. § 1692a(6)(F)....................................................................................................10

15 U.S.C. §1692f...............................................................................................................10

15 U.S.C. § 1692f (1) ............................................................................................... *passim*

Cal. Bus. & Prof. Code § 17200........................................................................................13

Cal. Civ. Code § 1788.2(c)................................................................................................11

FDCPA .................................................................................................................. *passim*

Rosenthal Fair Debt Collection Practices Act .......................................................... *passim*

**Other Authorities**

85 Ops. Cal. Att'y Gen. 215, 2002 WL 31440180 (Oct. 29, 2002) ...................................12

**STATEMENT OF ISSUES TO BE DECIDED**

This motion raises the following issues:

1.     Should the Court dismiss Plaintiff's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") claim to the extent it incorporates the Fair Debt Collection Practices Act ("FDCPA") because the fee Arvest assessed Plaintiff for paying her mortgage over the phone with Interactive Voice Response ("IVR fee") that she challenges is not a "debt" or "incidental to" the debt and is "permitted by law," and Arvest is not a "debt collector" under the FDCPA?

2.     Should the Court dismiss Plaintiff's Rosenthal Act claim because she fails to allege that Arvest is a "debt collector" under the statute, she agreed to pay the IVR fee before Arvest assessed it, and she fails to allege that Arvest misrepresented that her debt would be increased by the IVR fee?

3.     Should the Court dismiss Plaintiff's breach of contract claim because the IVR fee is not expressly prohibited by any law?

4.     Should the Court dismiss Plaintiff's unfair competition law claim because it is predicated on alleged violations of the FDCPA and the Rosenthal Act that she fails to sufficiently plead?

5.     Should the Court dismiss Plaintiff's unjust enrichment claim because it is not a separate cause of action and there is nothing unjust about Arvest assessing a fee that Plaintiff agreed to pay?

6.     Should the Court dismiss all of Plaintiff's claims because they are barred by the voluntary payment doctrine?

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Arvest Central Mortgage Company ("Arvest") customers may make their monthly mortgage payments at no cost by mail, through Automated Clearing House ("ACH") transfer, through their banks' bill pay systems, or in person at any branch. Alternatively, customers may make their payments for a fee online or by phone. Plaintiff Valerie Lembeck alleges one instance where she elected to make her payment by phone, using Interactive Voice Response ("IVR"), for a fee. Arvest disclosed to her the $5 fee it charges for IVR payments ("IVR fee"), and she agreed to pay this fee. In so doing, Plaintiff avoided a late fee of 5% of her monthly payment, as she acknowledges that she used the IVR payment method 11 days *after* her payment was due and 4 days before she would have been subject to such late fee. Although Plaintiff's loan agreements specifically required her to make her mortgage payments by mail and did not provide her with the right to make payments via IVR, she now alleges that giving her a voluntary option to do so in exchange for the fee is unlawful. Insofar as the Court concludes that such a fee is unlawful, mortgage servicers may discontinue providing additional payment methods that assist consumers like Plaintiff in avoiding higher-cost late fees and additional interest charges.

Plaintiff asserts that Arvest's assessment of the IVR fee violates the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), which both incorporates the restrictions on debt collectors set forth in the federal Fair Debt Collection Practices Act ("FDCPA") and establishes its own limitations. She claims that Arvest violated a provision of the FDCPA that prohibits a debt collector from collecting a "debt" or charge "incidental to" a debt unless it is "expressly authorized by the agreement creating the debt or permitted by law." She is wrong for several reasons. First, the IVR fee is not a "debt" or "incidental to" a debt under the statute. Second, the IVR fee was "permitted by law" because it was the subject of a transaction in which Arvest disclosed it to Plaintiff and she consented to pay it so that she could make her mortgage payment in a way not authorized in her loan agreements. Put another way, Plaintiff formed a separate agreement with Arvest, making its assessment of the IVR fee legally permissible. Third, the FDCPA does not even apply to Arvest

because it is not a "debt collector" under the statute.  Plaintiff's Rosenthal Act thus fails to the extent it is predicated on the FDCPA.

Plaintiff fares no better in alleging that Arvest violated provisions of the Rosenthal Act proscribing particular unlawful practices and misrepresentations.  Like the FDCPA, § 1788.14(b) of the Rosenthal Act bars debt collectors from collecting fees not "permitted by law" and therefore fails for the same reason that Plaintiff entered into a separate agreement with Arvest to pay the IVR fee in order to use the optional IVR payment method.  As to § 1788.13(e), the Complaint does not identify any misrepresentation by Arvest that Plaintiff's mortgage debt would be increased by the addition of an unlawful charge.

Plaintiff predicates her breach of contract and California unfair competition law ("UCL") claims on Arvest's alleged violations of the FDCPA and the Rosenthal Act, so those claims necessarily fail as well.  Plaintiff also predicates her UCL claim on Arvest's alleged practice of charging the IVR fee when it purportedly exceeds the actual cost to Arvest of accepting mortgage payments by phone, but courts routinely conclude that this practice is not unfair.  Plaintiff's breach of contract claim should also be dismissed for the foundational reason that her Deed of Trust only bars the assessment of fees "*expressly prohibited* . . . by Applicable Law," and neither the FDCPA nor Rosenthal Act has such a prohibition.

Finally, California does not recognize a cause of action for unjust enrichment.  Even if the Court construes Plaintiff's unjust enrichment claim as one for quasi-contract, it should be dismissed because she alleges an enforceable contract between the parties, and there is nothing unjust about Arvest assessing a fee that Plaintiff agreed to pay for an optional service.  Plaintiff's consent further warrants dismissal of her claims under the voluntary payment doctrine, which bars individuals who submit payments voluntarily from later seeking to recover them.

Each of these claims is simply about a mortgage servicer assessing a fully-disclosed fee that Plaintiff agreed to pay in order to use an entirely optional mortgage payment method not provided for (nor prohibited) under the terms of the original loan agreement.  As the United States Department of Justice, the Department of Housing and Urban Development, and 49 state attorneys general

agreed in the 2012 National Mortgage Settlement,[1] there is nothing wrong with that, and the Court should dismiss Plaintiff's Complaint in its entirety.

## FACTUAL BACKGROUND

Plaintiff obtained a loan on or about September 30, 2002 to purchase a home. (Compl. Ex. A at 1.) The loan was evidenced by a promissory note ("Note") (Decl. of Theresa L. Maxwell ("Maxwell Decl.") Ex. A), and secured by a mortgage lien on Plaintiff's home, as evidenced by the Deed of Trust (Compl. Ex. A).[2]

Plaintiff asserts that Arvest charges a fee of $5 when borrowers make mortgage payments online, a fee of $5 when borrowers make payments by phone through IVR, and a fee of $10 when borrowers make payments by phone through a customer service representative. (Compl. ¶ 1.) Plaintiff alleges that her mortgage payment is due on the 1st of the month and that a late charge will be assessed if payment is not received by the 16th of the month. (Id. ¶ 28.) Plaintiff further alleges that she made her February 1, 2020 mortgage payment over the phone using IVR on February 12, 2020, and that Arvest charged her the $5 IVR fee for doing so. (Id. ¶¶ 8, 28-29.) Plaintiff does not allege that she incurred any fees for making a payment online or through a customer service representative.

Arvest offers borrowers several methods for making mortgage payments at no cost, including by mail, through ACH, through their banks' bill pay systems, or in person at any branch. (Maxwell Decl. ¶ 5.) Instead of using these methods, Plaintiff elected to make a payment by phone

---

[1] The 2012 National Mortgage Settlement was an agreement between the federal government and 49 state attorneys general and the nation's five largest mortgage servicers. (See Press Release, Department of Justice, (Feb. 9, 2012), https://www.justice.gov/opa/pr/federal-government-and-state-attorneys-general-reach-25-billion-agreement-five-largest.) The agreement allowed fees that were disclosed on an accessible schedule of fees. (See, e.g., Bank of America Consent Judgment, Ex. A ¶ VI.B, http://www.nationalmortgagesettlement.com/files/Consent_Judgment_BoA-4-11-12.pdf.)

[2] In deciding a motion to dismiss, the Court can consider under the "incorporation by reference" doctrine materials whose contents are alleged in the complaint or that are necessarily relied on by or integral to the complaint. Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010) (considering agreement that was integral to complaint in deciding motion to dismiss even though not explicitly referenced in the complaint). Plaintiff's Deed of Trust is attached to the Complaint and the Note is integral to the Complaint: Plaintiff claims that it was unlawful for Arvest to assess her an IVR fee because she did not expressly authorize that fee in the Deed of Trust or elsewhere. (See, e.g., Compl. ¶¶ 2, 25, 30, 33, 57, 60-63, 73, 78, 80-81, 97, 109.)

through IVR. (Compl. ¶¶ 8, 29.) Nothing in Plaintiff's Deed of Trust or Note provided her with the right to make payments through IVR—either for a fee or at no cost—and nothing required her to use Arvest's optional IVR payment method. (Compl. Ex. A; Maxwell Decl. Ex. A.) Indeed, in paragraph three of the Note, Plaintiff agreed to make her monthly payment on her mortgage loan only at the physical address provided. (Maxwell Decl. Ex. A at 1 ¶ 3.)

To make a mortgage payment using Arvest's IVR payment method, a customer must enter the last four digits of their Social Security number, consent to the IVR fee, authorize the debit to their bank account, and confirm that the debit includes the $5 IVR fee.[3] (Maxwell Decl. ¶¶ 7-15.) In particular, the IVR payment method requires the customer to press "1" on their phone to make a payment that includes the IVR fee and to authorize a total payment that includes the IVR fee. (*Id.* ¶¶ 10, 14.) Plaintiff could not have made her February 12, 2020 payment without completing these steps. (*Id.* ¶ 6.)

Despite receiving notice of and consenting to the fee for making a payment with IVR in this separate and distinct agreement, Plaintiff asserts that Arvest's IVR fee is not authorized by the Deed of Trust and violates provisions of the Rosenthal Act prohibiting debt collectors from collecting fees for their services except as permitted by law and misrepresenting that a consumer's debt can be increased by fees that cannot legally be added to that debt, as well as the provision incorporating the federal analogue to the Rosenthal Act, the FDCPA. (*See* Compl. ¶¶ 25, 30, 56-65.) Based on these allegations, Plaintiff asserts claims on behalf of herself and a putative class of California borrowers

---

[3] The Court may also consider the transcript of Arvest's IVR payment method. Plaintiff's claims all turn on whether the IVR fee Arvest charged her was legally permissible, and the transcript is therefore integral to the Complaint and can be considered by the Court. (*See* Compl. ¶¶ 56-66, 74-83, 97-101, 109); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (although not referenced in the complaint, incorporating by reference webpages surrounding webpage with allegedly defamatory photograph and caption because they provided relevant context); *Barlow Respiratory Hosp. v. CareFirst of Maryland, Inc.*, No. CV-14-01335-MWF(SSX), 2014 WL 12573394, at *2, 6 (C.D. Cal. June 24, 2014) (incorporating by reference transcript of telephone call to determine whether the parties had entered into an oral contract); *Navarro v. Sears Life Ins. Co.*, No. 2:08-cv-00527-GEB-EFB, 2008 WL 3863451, at *2 n.1 (E.D. Cal. Aug. 18, 2008) (script followed by telemarketer incorporated by reference into complaint where the plaintiff alleged that the telemarketer failed to disclose certain provisions to an insurance policy during telephone conversation).

1  for breach of contract and unjust enrichment, and violations of §§ 1788.13(e), 1788.14(b), and

2  1788.17 of the Rosenthal Act and the UCL.

## LEGAL STANDARD

4       To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead

5  "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

6  550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  It "requires more than

7  labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

8  *Twombly*, 550 U.S. at 555.  Therefore, a complaint will not suffice "if it tenders 'naked assertion[s]'

9  devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).

## ARGUMENT

### I.    Plaintiff Agreed to Pay the IVR Fee.

12       Plaintiff's overt actions established an agreement with Arvest to pay the IVR fee in exchange

13  for making payment in a method not otherwise allowed by her loan agreements.[4]  "[M]utual

14  manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of

15  contract."  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citation omitted).

16  In order to make her February 2020 monthly mortgage payment using Arvest's IVR payment

17  method, Plaintiff was required to consent to the IVR fee twice.  First, she had to press "1" on her

18  phone to agree that her request to make a payment would include the IVR fee.  (Maxwell Decl. ¶

19  10.)  Second, she had to press "1" on her phone to authorize a total payment that Arvest expressly

20  stated included the $5 IVR fee.  (*Id.* ¶ 14.)  Plaintiff could not have made her February 2020 payment

21  by phone in the manner she alleges without twice consenting to the IVR fee through her conduct.

22  She therefore entered into an agreement with Arvest to pay the IVR fee.  *See, e.g.*, *Lee v.*

23  *Ticketmaster L.L.C.*, No. 19-15673, 2020 WL 3124256, at *2 (9th Cir. June 12, 2020) (concluding

24  that website user consented to terms of use by clicking "Sign In" button where text displayed below

25  the button stated "By continuing past this page, you agree to our Terms of Use"); *Magno v. Experian*

---

27  [4] Such an agreement is contemplated under the Deed of Trust.  (*See* Compl. Ex. A at 10 ¶ 14

28  ("[T]he absence of express authority in this Security Instrument to charge a specific fee to Borrower
shall not be construed as a prohibition on the charging of such a fee.").)

1  *Info. Sols., Inc.*, Case No. C17-5478, 2018 WL 2984979, at *2 (W.D. Wash. June 14, 2018) (finding

2  binding agreement where terms located online were accepted via IVR by pressing "1").

3  **II.      Plaintiff Fails to State a Rosenthal Act Claim.**

4  Plaintiff alleges that Arvest's assessment of the IVR fee violates three provisions of the

5  Rosenthal Act.[5]   Given her agreement with Arvest to pay the IVR fee to make her February

6  mortgage payment by phone, Plaintiff fails to state a claim predicated on any of the provisions

7  of that Act.

8  **A. Plaintiff Cannot Predicate Her Rosenthal Act Claim on a Violation of the FDCPA.**

9  Under § 1788.17 of the Rosenthal Act, a violation of the FDCPA is actionable under the

10  Rosenthal Act. *See* Cal. Civ. Code § 1788.17.  Plaintiff therefore bases her Rosenthal Act claim on

11  Arvest's alleged violation of the FDCPA provision disallowing a debt collector from using unfair

12  or unconscionable means to collect any debt, including "[t]he collection of any amount (including

13  any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is

14  expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f

15  (1).  Plaintiff fails to allege that Arvest violated the FDCPA, however, because the IVR fee is not a

16  "debt" or "incidental to" the debt, the IVR fee is "permitted by law," and Arvest is not a "debt

17  collector."  As a result, Plaintiff's Rosenthal Act claim predicated on the FDCPA falters.

18  **1.   The IVR Fee Is Not a Debt or Incidental to the Debt.**

19  Section 1692f(1) applies to a "debt" or a charge "incidental to" a debt.  15 U.S.C. § 1692f(1).

20  The IVR fee is not a debt under the FDCPA because it is charged for an optional service not provided

21  for in the underlying loan documents, is agreed to and assessed contemporaneously, and a borrower

22  has no "obligation" to pay it.  15 U.S.C. § 1692a(5); *see* Order on Motion to Dismiss, *Estate of*

23  *Derrick Campbell v. Ocwen Loan Servicing,  LLC*, No. 20-cv-80057-SINGHAL, at 4 (S.D. Fla. Apr.

24  30, 2020), ECF No. 30 ("The not-yet-incurred convenience fee is not a debt under the plain meaning

25

26  _____
       [5] The Complaint also challenges fees assessed in connection with the option to pay online or
27  over the phone with a customer service representative.  Plaintiff lacks standing to challenge these
       fees.  She did not incur any such fees and therefore they could not have caused her any injury.  *See*
28  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (Article III standing requires injury,
       causation, and redressability).

of [the FDCPA].").[6]  Nor is it "incidental" to Plaintiff's mortgage debt.  Unlike late fees or interest charges, the IVR fee is charged in connection with a borrower electing a voluntary payment method.  As Judge Carter explained in determining that a similar fee does not violate the FDCPA:

> The Court concludes that the charge was not "incidental" to the principal obligation.  15 U.S.C. § 1692f(1).  It is undisputed that this charge would be imposed only if the debtor elected to pay via credit card.  While this payment method was offered in the letter, the letter also provided for payment without additional charge if the debtor elected to pay by check.  Nothing in the letter steered the consumer to payment by credit card, and the letter provided clear notice that the fee was imposed only upon those who sought to pay via credit card.  A consumer must choose to affirmatively and separately opt-in to this alternative method.

*Flores v. Collection Consultants of California*, No. SA CV 14-0771-DOC (RNBx), 2015 WL 4254032, at *10 (C.D. Cal. Mar. 20, 2015).

Following *Flores*, district courts have split over whether such fees are "incidental" to mortgage debt.  *Compare, e.g.*, *Campbell*, No. 20-cv-80057-SINGHAL, at 4-5 (dismissing FDCPA claim because "[t]he convenience fees are a separate transaction neither part of, nor incidental to, the transferred debt"); Order on Motion to Dismiss, *Reid v. Ocwen Loan Servicing, LLC*, No. 20-cv-80130-SINGHAL (S.D. Fla. May 4, 2020) (same), ECF No. 31,[7] *with Wittman v. CB1, Inc.*, No. CV-15-105-BLG-SPW-CSO, 2016 WL 1411348, at *4-5 (D. Mont. Apr. 8, 2016), *report and recommendation adopted*, No. CV 15-105-BLG-BMM, 2016 WL 3093427 (D. Mont. June 1, 2016) (a fee imposed for using a certain payment method is incidental to the principal obligation).  The Court should adopt the better reasoning of *Flores* and the decisions that follow it.  These decisions properly recognize that such fees arise from the borrower's desire to use an optional payment method, not from an obligation to pay the underlying debt.  In other words, here Plaintiff incurred the IVR fee not because of her mortgage debt, but because of the parties' agreement for Arvest to provide a separate, optional payment method.  The IVR fee is incidental to Arvest's provision of that optional method, not the debt.

---

[6] This order is not yet available on Westlaw or Lexis, and Arvest has therefore attached it as Exhibit A.

[7] This order is not yet available on Westlaw or Lexis, and Arvest has therefore attached it as Exhibit B.

### 2.   The FDCPA Does Not Prohibit Arvest's Assessment of the IVR Fee.

Even if the Court concludes that the IVR fee was "incidental" to Plaintiff's debt, Plaintiff still fails to allege that the fee violates the FDCPA because it was "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).  Here, Plaintiff voluntarily entered into a separate agreement to pay the IVR fee in exchange for allowing her to make her mortgage payment over the phone, a method not authorized under her Deed of Trust or Note.  (*See supra* Section I.)  The parties' subsequent, separate agreement to allow payment in a way not originally contemplated in exchange for a nominal fee easily falls within the ordinary meaning of "permitted by law."  *See Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712, 722 (9th Cir. 2003) (defining "permit" to mean "*[t]o suffer, allow, consent, let*; to give leave or license; *to acquiesce, by failure to prevent*, or to expressly assent or agree to the doing of an act" (emphasis added)).  In recognition of this, courts have concluded that such fees do not violate the FDCPA so long as, like here, they are not prohibited by state law.  *See Meintzinger v. Sortis Holdings, Inc.*, 18-CV-2042 (BMC), 2019 WL 1471338, at *3 (E.D.N.Y. Apr. 3, 2019) (rejecting the plaintiff's argument that pay-by-phone fee voluntarily paid for an optional service was an unauthorized fee under the FDCPA where no state law provision prohibited such a fee).[8]  As one court reasoned, "[n]othing in the FDCPA requires the collection company to accept payments by telephone, and thus nothing prohibits it from offering to enter into a new contract with the debtor, *i.e.*, 'for $ 6, I will give you the added convenience of paying by phone.'"  *Id.* at *3.

---

[8] *See also* Order on Motion to Dismiss, *Turner v. PHH Mortgage Corp.*, No. 8:20-cv-137-T-30SPF, 2020 WL 2517927, at *2 (M.D. Fla. Feb. 24, 2020) (rejecting FDCPA claim based upon "fee incurred in a separate agreement between the parties to ensure same-day posting and processing of [the plaintiff's] mortgage payments—an optional service that [plaintiff] voluntarily incurred"); *Ketterman v. I.C. Sys., Inc.*, No. 4:18 CV 1136 CDP, 2019 WL 3777635, at *2 (E.D. Mo. Aug. 12, 2019) (5.5% fee for paying debt by credit card did not violate FDCPA "because it was an optional form of payment which plaintiff could have avoided if he paid by check"); *Duffee v. Collecto, Inc.*, No. 3-12-CV-0187-B, 2012 WL 652228, at *1-2 (N.D. Tex. Feb. 8, 2012) ($15 processing fee for phone payment did not violate FDCPA because the debtor was not required to pay the account over the phone, and the fee was disclosed before it was charged), *report & recommendation adopted*, 2012 WL 666150 (N.D. Tex. Feb. 28, 2012); *Lee v. Main Accounts, Inc.*, No. 96-3922, 1997 WL 618803, at *1 (6th Cir. Oct. 6, 1997) (5% fee for optional method of paying account by credit card did not violate FDCPA because the debtor was "not force[d] . . . to pay [the] surcharge"); *Lewis v. ACB Bus. Servs., Inc.*, 911 F. Supp. 290, 292-93 (S.D. Ohio 1996) (processing fee for payment by credit card did not violate FDCPA because the fee was "voluntarily chosen by the debtor" if he selected that payment method), *order aff'd*, 135 F.3d 389 (6th Cir. 1998).

1      The Ninth Circuit has not determined whether a debt collector's assessment of a fee for an

2  optional payment method runs afoul of the FDCPA where the consumer is provided notice that use

3  of the method will result in a fee and agrees to pay the fee before it is charged.  Lacking clear

4  guidance, some district courts have concluded incorrectly that fees not "expressly authorized by the

5  agreement creating the debt" 15 U.S.C. § 1692f(1), violate the FDCPA where not expressly

6  authorized by a state statute.  *See, e.g.*, *Torliatt v. Ocwen Loan Servicing, LLC*, No. 19-CV-04303-

7  WHO, 2020 WL 1904596, at *2 (N.D. Cal. Apr. 17, 2020).  But Congress only said that an incidental

8  charge must be "permitted by law," not "expressly authorized by law," thereby allowing the fees to

9  be assessed so long as they are not prohibited by law.  *See Norton*, 353 F.3d at 722 (for conduct to

10  be "permit[ted]" under statute did not require "an affirmative act of legal authority"; it is sufficient

11  that the conduct be "acquiesce[d to], by failure to prevent").  Indeed, Congress specifically required

12  an incidental charge to be "expressly authorized" in an agreement creating the debt, but chose not

13  to use the same language with respect to the "law."  *See  Arizona Elec. Power Co-op., Inc. v. U.S.,*

14  816 F.2d 1366, 1375 (9th Cir. 1987) ("When Congress includes a specific term in one section of a

15  statute but omits it in another section of the same Act, it should not be implied where it is

16  excluded.").

17      Moreover, requiring affirmative statutory authorization for a fee for an optional payment

18  method would undermine the purposes of the FDCPA and would in fact harm consumers.  The

19  FDCPA was created to "eliminate abusive debt collection practices."  15 U.S.C. § 1692(e).  There

20  is nothing "abusive" about Arvest's assessment of a nominal fee to provide additional payment

21  methods to borrowers not contemplated by their original loan agreements, particularly where the fee

22  is disclosed and agreed to by the borrower before it is charged.  If mortgage servicers like Arvest

23  are not permitted to charge such fees, they will cease to offer additional payment methods that

24  provide a convenience to borrowers.  Such methods allow borrowers to know precisely when their

25  payments are processed and can help them avoid late penalties, interest charges, or other adverse

26  consequences from late payments, which Plaintiff avoided here by using the IVR payment method.

27  (*See* Compl. ¶¶ 28-29; Maxwell Decl. Ex. A at Rider to Promissory Note and Security Instrument

28  ¶¶ 1-2 (disclosing late charges for overdue payments and interest on past sums due).)

### 3. Arvest Is Not a "Debt Collector" Under the FDCPA.

The FDCPA only regulates "debt collectors." *See* 15 U.S.C. §1692f. Under the statute, a "debt collector" must "collect[] or attempt[] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Creditors collecting their own debts are not "debt collectors" for the purposes of the FDCPA. *McNamara v. Wells Fargo Bank*, No. CV-18-2131-MWF (AGRx), 2018 WL 6137599, at *4 (C.D. Cal. May 22, 2018). Here, Plaintiff alleges that when Arvest acquired the servicing rights to Plaintiff's loan, Arvest "became bound as an assignee" to her Deed of Trust. (Compl. ¶ 27; *see id.* ¶¶ 91, 95.) Thus, Arvest would not have been collecting a debt "due another" and was not a "debt collector" under the FDCPA when Plaintiff made her alleged mortgage payment via IVR on February 12, 2020. (*Id.* ¶¶ 8, 29.) Further, under the FDCPA, "debt collectors" do not include mortgage servicing companies or assignees of debt so long as the debt was not in default at the time it was assigned. *McNamara*, 2018 WL 6137599, at *4; *see* 15 U.S.C. § 1692a(6)(F). Arvest was therefore not a "debt collector" for the additional reason that it was acting as a mortgage servicer with respect to Plaintiff's loan, and she does not allege that her loan was in default at the time Arvest began servicing it. (Compl. ¶ 8.)

Given that Arvest is not a "debt collector" within the meaning of the FDCPA, Plaintiff fails to allege that it violated the statute. Thus, Plaintiff cannot predicate her Rosenthal Act claim on a violation of the FDCPA. *See, e.g., Oya v. Wells Fargo Bank, N.A.,* No. 3:18-cv-01999, 2019 WL 3239021, at *4-6 (S.D. Cal. July 17, 2019) (dismissing Rosenthal Act claim predicated on FDCPA § 1692f(1) because the defendant was not a "debt collector" under the FDCPA); *Kemp v. Wells Fargo Bank, N.A.,* No. 17-cv-01259-MEJ, 2017 WL 4805567, at *8-11 (N.D. Cal. Oct. 25, 2017) (same).

### B. Plaintiff's Rosenthal Act Claim Fails for Additional Reasons.

Even if Plaintiff could predicate her Rosenthal Act claim on the FDCPA (she cannot), her claim should nonetheless be dismissed because she fails to sufficiently plead that Arvest is a "debt collector" under the Rosenthal Act. Additionally, § 1788.14(b) of the Rosenthal Act proscribes similar conduct to FDCPA §1692f(1) and Plaintiff thus fails to allege that Arvest violated that provision for similar reasons to those discussed regarding §1692f.(1) *See* Cal. Civ. Code §

1788.14(b) (a debt collector may not "[c]ollect[] or attempt[] to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law").  Likewise, Plaintiff has not stated a violation of § 1788.13(e) because she does not identify any misrepresentation by Arvest that her mortgage debt "may be increased by the addition of . . . service fees, finance charges, or other charges if, in fact, such fees or charges may not legally be added to" that debt.  *Id.* § 1788.13(e).

### 1. Plaintiff Fails Plausibly to Allege That Arvest Is a "Debt Collector."

"To state a claim under the Rosenthal Act, a plaintiff is required to allege the factual basis for asserting that Defendants are debt collectors, attempting to collect debts."  *Anderson v. Ocwen Loan Servicing, LLC*, No. 2:15-CV-05124-SVW-AGR, 2016 WL 11518592, at *3 (C.D. Cal. Feb. 24, 2016).  The statute defines a "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of that person or others, engages in debt collection."  Cal. Civ. Code § 1788.2(c).  And "debt collection" is defined as "any act or practice in connection with the collection of consumer debts."  *Id.* § 1788.2(b).  Plaintiff's bare allegation that "Arvest regularly engages in debt collection" is insufficient to plausibly plead that it is a "debt collector" regulated by the Rosenthal Act.  (Compl. ¶ 54); *see, e.g.*, *Denison v. Citifinancial Servicing LLC*, No. C 16-00432 WHA, 2016 WL 1718220, at *2 (N.D. Cal. Apr. 29, 2016) (dismissing Rosenthal Act claim where the plaintiff did not allege, "in anything other than conclusory fashion, that defendant 'regularly collects or attempts to collect' debts"); *Parker v. Peters and Freedman, LLP,* No. 8:17-cv-00667-JLS-DFM, 2017 WL 10525820, at *1 (C.D. Cal. Jul. 10, 2017) (dismissing Rosenthal Act claim because the plaintiff's "conclusory allegations that 'Defendants are  . . . engaged in the practice of collecting consumer debt' will not suffice").

### 2. The IVR Fee Does Not Violate § 1788.14(b).

Similar to the FDCPA, the Rosenthal Act prohibits a debt collector from "[c]ollecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as *permitted by law*."  Cal. Civ. Code § 1788.14(b) (emphasis added).  "The Rosenthal

Act mimics or incorporates by reference the FDCPA's requirements." *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012). Therefore, Arvest's assessment of a fully disclosed and agreed-to fee for a borrower's use of an optional payment method not provided for in their loan agreements is "permitted by law" under the Rosenthal Act for the same reasons it is "permitted by law" under the FDCPA. (*See supra* Section II.A.2.)

Indeed, the language of the Rosenthal Act makes even clearer that such a fee is "permitted by law" so long as it is not prohibited by state statute. Unlike FDCPA § 1692f(1), § 1788.14(b) does not explicitly allow debt collectors to collect charges "expressly authorized by the agreement creating the debt." If the phrase "permitted by law" in § 1788.14(b) is read narrowly to only capture fees expressly authorized by state statute, a fee expressly authorized by the agreement creating the debt, but not also expressly authorized by statute, would be permissible under the FDCPA but impermissible under the Rosenthal Act. This would be an anomalous result. *See Marcotte v. Gen. Elec. Capital Servs., Inc.*, 709 F. Supp. 2d 994, 999 (S.D. Cal. 2010) (analogous provisions of the FDCPA and Rosenthal Act should be harmonized where possible). It would also be inconsistent with the California Attorney General's opinion that, like the FDCPA, the Rosenthal Act should be interpreted to permit "a fee for a special payment option that may benefit the cardholder, where the fee is set forth in the credit card agreement and the cardholder is free to choose or reject the option." 85 Ops. Cal. Att'y Gen. 215, 2002 WL 31440180 at *4 (Oct. 29, 2002).

### 3. Plaintiff Does Not Identify Any Misrepresentation in Violation of § 1788.13(e).

Finally, Plaintiff claims that Arvest violates § 1788.13(e) of the Rosenthal Act, which prohibits a debt collector from making a "false representation that the consumer debt may be increased by the addition of . . . service fees, finance charges, or other charges if, in fact, such fees or charges may not legally be added to the existing obligation." Cal. Civ. Code § 1788.13(e). Plaintiff alleges that "[b]y assessing [the IVR fee], Arvest misrepresented that the mortgage loan debt[] of Plaintiff . . . may be increased by the addition of the" IVR fee. (Compl. ¶ 56.) Merely charging the IVR fee for Plaintiff's voluntary use of the IVR payment method is not equivalent to representing that the fee would be "added to [Plaintiff's] existing obligation." *See Waddell v. U.S. Bank Nat'l Ass'n*, 395 F. Supp. 3d 676, 683 (E.D.N.C. 2019) (concluding under analogous provision

of North Carolina debt collection law that "charging a service fee for paying by phone does not plausibly constitute a false representation that [the debt collector] could increase [the plaintiff's] existing obligation"). Nor, in fact, did Arvest make any such representation. (*See* Maxwell Decl. ¶¶ 7-16.) In any event, Arvest's assessment of the IVR fee was "legal[]" because Plaintiff expressly agreed to it before using Arvest's IVR payment method to make her February 2020 mortgage payment. (*See supra* Section I.)

**III.  Plaintiff Fails to State a UCL Claim.**

Plaintiff fails to allege that Arvest's assessment of the IVR fee violates the UCL's "unlawful" and "unfair" prongs. *See* Cal. Bus. & Prof. Code § 17200. Plaintiff predicates her UCL unlawful claim on Arvest's alleged violations of the FDCPA and Rosenthal Act. (*See* Compl. ¶¶ 71-83.) But, as discussed, Plaintiff failed to state a violation of those statutes given that, among other reasons, she voluntarily entered into an agreement with Arvest to pay the fee in exchange for the use of Arvest's optional IVR payment service. (*See supra* Section I.)

Plaintiff predicates her UCL unfair claim on her allegations that (1) the IVR fee was not authorized by the Deed of Trust or applicable law and (2) the IVR fee allegedly exceeds the actual cost of providing the IVR payment method. (Compl. ¶ 87.) As to the first allegation, Arvest is not required "to point to a statute or contract that allows it to charge a fee for a service. The burden is on [Plaintiff] to show why [Arvest] was *not* permitted to do so." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1555 (2007) (emphasis in original). As to the second, "federal courts in California have regularly rejected claims that surcharges—even those disproportionate to the seller's underlying costs—constitute unfair competition." *Lit'l Pepper Gourmet, Inc. v. Airgas USA, LLC*, No. 19CV837-LAB (AGS), 2019 WL 6218780, at *4 (S.D. Cal. Nov. 21, 2019); *see, e.g., Graham v. VCA Animal Hosps., Inc.*, 729 F. App'x 537, 540 (9th Cir. 2018) (biohazard fee charged to consumers was not unfair even if the defendant profited from charging the fee because "a customer has no legitimate interest in what a business does with its money" and a business's "failure to disclose their own costs or profit margins is not, on its face, unfair" (citations omitted)).

**IV.    Plaintiff Fails to State a Breach of Contract Claim Based on the Deed of Trust.**

Plaintiff's breach of contract claim is predicated on a contention that Arvest breached a provision in the Deed of Trust prohibiting the lender from "charg[ing] fees that are *expressly prohibited . . . by Applicable Law.*"[9]  (Compl. ¶¶ 31, 98 (emphasis added); *see id.* Ex. A ¶ 14.) Under the Deed of Trust, "Applicable Law" includes federal and California statutory law (Compl. Ex. A ¶¶ (I), 16), and Plaintiff claims that certain provisions of the FDCPA and Rosenthal Act "expressly prohibit[]" the challenged fee (*see id.* ¶¶ 33-34, 100-101).  But these provisions do not "expressly prohibit[]" any fees, much less the IVR fee that Arvest fully disclosed and that Plaintiff agreed to pay in advance of incurring it for her voluntary use of the IVR payment option.  (*See supra* Section II.A (discussing requirements of FDCPA § 1692f(1) and Rosenthal Act §§ 1788.13(e), 1788.14(b), and 1788.17).)  As the Deed of Trust forbids only the collection of fees that are "expressly prohibited," a violation of the FDCPA or Rosenthal Act would not constitute a breach of that agreement.  *See Torliatt,* 2020 WL 1904596, at *5 (concluding that fees for paying mortgage over the phone are not "expressly prohibited" by the FDCPA or Rosenthal Act).  Moreover, even if Plaintiff could insert an express fee prohibition into the FDCPA or Rosenthal Act, she still would not state a breach of contract claim because the IVR fee does not violate those statutes.  (*See supra* Section II.)

**V.    Plaintiff Fails to State an Unjust Enrichment Claim.**

California does not have a separate cause of action for unjust enrichment, *Brodsky v. Apple Inc.*, No. 19-CV-00712-LHK, 2020 WL 1694363, at *14 (N.D. Cal. Apr. 7, 2020), but courts will sometimes construe a claim for unjust enrichment as a quasi-contract claim for restitution, *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  Plaintiff's "unjust enrichment" claim nonetheless fails for two reasons.  First, a plaintiff cannot plead a claim for quasi-contract

---

[9] Without any elaboration, Plaintiff also asserts that Arvest's assessment of the IVR fee breaches the Deed of Trust because the parties did not agree to the fee in the Deed of Trust and the fee is in excess of the amount Arvest pays to process IVR payments.  (Compl. ¶¶ 92, 97.)  But neither allegation demonstrates a breach of the Deed of Trust because Plaintiff fails to identify the specific provision of the Deed of Trust that Arvest allegedly breached.  *See, e.g., Donohue v. Apple, Inc.*, 871 F.Supp.2d 913, 930-31 (N.D. Cal. 2012) (dismissing breach of contract claim where complaint failed to show a "specific provision of the contract allegedly breached by the defendant.").  Nor could Plaintiff identify any such provision because none exists.

1    where she also alleges an enforceable contract.  *Brodsky*, 2020 WL 1694363, at *14 (dismissing

2    unjust enrichment claim with prejudice).   Here Plaintiff contends that the Deed of Trust is an

3    enforceable contract governing her dispute with Arvest.  (*See, e.g.*, Compl. ¶ 90.)  Second, to state

4    a claim, Plaintiff must allege that Arvest "has been unjustly conferred a benefit 'through mistake,

5    fraud, coercion, or request.'"  *Astiana*, 783 F.3d at 762.  Plaintiff fails to establish that any unjustness

6    arose from her being offered an alternative payment method for a nominal fee to which she expressly

7    agreed.

8        **VI.    Plaintiff's Claims Are Barred by the Voluntary Payment Doctrine.**

9        The voluntary payment doctrine precludes those who voluntarily submit payment from later

10   seeking to recover that same payment.  *Parino v. BidRack, Inc.,* 838 F. Supp. 2d 900, 908-09 (N.D.

11   Cal. Sep. 26, 2011).  Here, Plaintiff had "full knowledge" of the facts regarding the IVR fee because

12   Arvest disclosed the fee (and its amount) to her before she voluntarily incurred and paid it.  *Am. Oil*

13   *Serv. v. Hope Oil Co.*, 194 Cal. App. 2d 581, 586 (1961).  And the payment was not made under

14   "duress, coercion, or compulsion" because Arvest offered no-cost methods for Plaintiff to make her

15   mortgage payment, consistent with her Note.  *Steinman v. Malamed*, 185 Cal. App. 4th 1550, 1558

16   (2010) (citation omitted).  Therefore, Plaintiff's claims should be dismissed under the voluntary

17   payment doctrine.

18                                **CONCLUSION**

19       For all of the foregoing reasons, Arvest respectfully requests that the Court dismiss

20   Plaintiff's Complaint with prejudice.

21   DATED:  August 10, 2020                    BUCKLEY LLP

22

23

24                                    By:    /s Lauren L. Erker
                                         _____
25                                       Valerie L. Hletko (*Pro Hac Vice Pending*)
                                         Scott T. Sakiyama (*Pro Hac Vice Pending*)
26                                       Lauren L. Erker

27                                       Attorneys for Defendant Arvest Central Mortgage
                                         Company

28