# EXHIBIT A

# NOTE

September 30, 2002                         WALNUT CREEK                                    CA
[Date]                                              [City]                                           [State]

1657 POPLAR DRIVE, WALNUT CREEK, CA   94595

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 220,000.00   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Downey Savings and Loan Association, F.A.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of            6.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st**        day of each month beginning on **December 1, 2002**     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **November 1, 2032**       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **3501 Jamboree Road, Newport Beach, CA   92660**
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **1,354.58**          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

-5N (0005).02                   Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                     Initials:

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

#### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.





Form 3200 1/01
Initials:

Page 2 of 3

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**YOU ARE NOT OBLIGATED TO PAY ANY MONEY UNLESS YOU SIGN THIS CONTRACT AND RETURN IT TO THE SELLER/LENDER.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JOHN M LEMBECK                -Borrower

_____ (Seal)
VALERIE M LEMBECK             -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

*[Sign Original Only]*



## RIDER TO PROMISSORY NOTE AND SECURITY INSTRUMENT

Date: **September 30, 2002**

Property Address: **1657 POPLAR DRIVE, WALNUT CREEK, CA 94595**

FOR VALUE RECEIVED, the undersigned (collectively, the Borrower) agrees that the following shall be incorporated into that certain deed of trust of even date herewith and any riders thereto (collectively, the Security Instrument) executed by Borrower, as trustor, in favor of Downey Savings and Loan Association, F.A. (the Lender) as beneficiary, and also into that certain promissory note and any riders thereto (collectively, the Note) of even date herewith executed by Borrower in favor of Lender. The Lender or anyone who takes the Note by transfer and who is entitled to receive payments under the Note is referred to in the Note as the Note Holder. To the extent that the provisions of this Rider to Promissory Note and Security Instrument (the Rider) are inconsistent with the provisions of the Security Instrument and/or the Note, the provisions of this Rider shall prevail and shall supersede any such inconsistent provisions of the Security Instrument and/or the Note. The performance of the provisions of this Rider shall be secured by the Security Instrument.

If the Federal Home Loan Mortgage Corporation (FHLMC), the Federal National Mortgage Association (FNMA) or any other investor buys all or some of Lenders rights under the Security Instrument and the Note, the provisions and agreements contained in this Rider, may, at the investors discretion, no longer have any force or effect. If thereafter the FHLMC or FNMA or any other investor should retransfer the Security Instrument and Note to the Lender or Lenders successor in interest, the provisions and agreements in this Rider shall thereupon be reinstated without the need for any additional writing or document.

1. LATE CHARGES and ACCRUED INTEREST.

In the event any installment is not received by the Note Holder within fifteen (15) days after its due date, Borrower shall pay to the Note Holder a late charge in an amount equal to **SIX** percent ( **6.0000%**) of the installment due that is applicable to the payment of principal and interest, or $5.00, whichever is greater. If the fifteen day period ends on a weekend or a holiday, such period is extended to the next business day. Borrower acknowledges that it would be difficult and impractical to fix Note Holders actual damages arising out of any late payment and that the foregoing late payment charge is a reasonable estimate of the same and shall be presumed to be the actual amount. The provisions of this paragraph shall not limit the Note Holders right, under the Security Instrument or otherwise, to compel prompt performance under the Note. Upon default, accrued and unpaid interest shall further bear interest at the then applicable interest rate until paid.

Payments for this loan are due on the 1st of each month and a late charge will be assessed if payments are not received by the 16th of each month. If sufficient funds are not available when we attempt to debit your loan payment from your designated checking account, a "returned item charge" will be assessed.

2. INTEREST ON PAST DUE SUMS.

Should any sum due hereunder, including accumulated interest, not be paid in accordance with the terms of the Note, the sums not paid shall bear interest at the same rate as the principal, or to the maximum rate allowed by law, whichever is less.

3. ACCELERATION; REMEDIES.

If any monthly installment, including late charges, under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other deed of trust or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice and regardless of any prior forbearance. In such event, Lender at its option, may then or thereafter deliver to the Trustee a written declaration of default and demand for sale and shall cause to be filed of record a written notice of default and of election to cause to be sold the Property. Lender shall also deposit with the Trustee this Security Instrument and any notes and all documents evidencing expenditures secured thereby. After the lapse of such time as then may be required by law following recordation of such notice of default, and notice of sale having been given as then required by law, the Trustee, without demand on Borrower, shall sell the Property at the time and place specified by such Trustee in such notice of sale, or at the time to which such notices sale has been duly postponed, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale, except that Lender may offset its bid to the extent of the amount owing to it under the Note and this Security Instrument, including the Trustees fee and expenses. The Trustee may sell the Property as a whole or in separate parcels if there is more than one parcel, subject to such rights as Borrower may have by law to direct the manner or order of sale, or by such other manner of sale which is authorized by law. The Trustee may postpone the time of sale of all or any portion of the Property by public declaration made by the Trustee at the time and place last appointed for sale. The Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recital in such deed of any matters of fact shall be conclusive proof of the truthfulness thereof.

Any person, including Borrower, the Trustee or Lender may purchase at such sale. After deducting all costs, fees and expenses of the Trustee, and of this Security Instrument, including costs of evidence of title in connection with such sale, the Trustee first shall apply the proceeds of sale to payment of all sums expended under the terms of this Security Instrument not then repaid, with accrued interest at the rate then payable under the Note or Notes secured thereby, and then to payment of all other sums secured thereby and, if thereafter there by any proceeds remaining, shall distribute them to the person or persons legally entitled thereto.

4. HAZARD OR PROPERTY INSURANCE.

Unless Lender and Borrower otherwise agree in writing, any insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as it may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, the Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

If Borrower obtains earthquake insurance, and other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder and (ii) be subject to the provisions of this paragraph 4 hereof with respect to insurance proceeds.

Lender may charge a reasonable fee for the cost of determining whether the building or mobile home securing a loan is located in an area having special flood hazards, subject to applicable law.

If the terms of this Rider conflict with any of the terms of the Security Instrument and/or Promissory Note, the terms of the Rider shall be controlling.
BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Rider to Promissory Note and Security Instrument.

_____(Seal)    _____(Seal)
JOHN M LEMBECK           -Borrower    VALERIE M LEMBECK           -Borrower

_____(Seal)    _____(Seal)
                         -Borrower                             -Borrower

_____(Seal)    _____(Seal)
                         -Borrower                             -Borrower