1  Hassan A. Zavareei (SBN 181547)
   Kristen G. Simplicio (SBN 263291)
2  TYCKO & ZAVAREEI LLP
   1828 L Street NW, Suite 1000
3  Washington, D.C. 20036
   Telephone: 202-973-0900
4  Facsimile: 202-973-0950
   hzavareei@tzlegal.com
5  ksimplicio@tzlegal.com

6  BAILEY & GLASSER, LLP
   1999 Harrison St., Suite 660
7  Oakland, CA 94612
   Telephone: 510-207-8633
8  Facsimile: 510-463-0291
   twalburg@baileyglasser.com
9
   [Additional counsel in signature block]
10
   *Attorneys for Plaintiff*
11

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14                SAN FRANCISCO DIVISION

15

16  **VALERIE LEMBECK, ROBERT LANGE,**      Case No. 3:20-cv-03277-VC
    **and ANDREW MILLER**, *on behalf of themselves*
17  *and all others similarly situated,*        **PLAINTIFFS' NOTICE OF MOTION**
                                                **AND MOTION FOR PRELIMINARY**
18              Plaintiff,                       **APPROVAL OF CLASS ACTION**
                                                **SETTLEMENT AND FOR**
19       v.                                      **CERTIFICATION OF SETTLEMENT**
                                                **CLASS**
20
    **ARVEST CENTRAL MORTGAGE CO.,**           Date: March 18, 2021
21                                              Time: 10:00 a.m.
                Defendant.                      Courtroom:
22                                              Judge: Vince Chhabria
23
                                                Date Filed: May 14, 2020
24                                              Trial Date: None set

25

26

27

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
Case No. 3:20-cv-03277-VC

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on **March 18, 2021, at 10:00 a.m.**, or as soon thereafter as this matter may be heard, in Courtroom 4, before the Honorable Vince Chhabria, Plaintiff Valerie Lembeck, together with new Plaintiffs Robert Lange and Andrew Miller, will and hereby do respectfully move this court to preliminarily approve the Settlement reached in this case, the terms of which are more specifically described in the Memorandum and Points of Authority filed in support of this Motion.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Settlement Agreement, the Declaration of Hassan A. Zavareei and exhibits thereto, the Declaration of James L. Kauffman and exhibits thereto, the pleadings and papers on file in this Action, and any other such evidence and argument as the Court may consider. Defendant Arvest Central Mortgage Company does not oppose this motion.

Dated: February 26, 2021                    Respectfully submitted,


/s/ Hassan A. Zavareei
Hassan A. Zavareei (SBN 181547)          Todd Walburg (SBN 213063)
Kristen G. Simplicio (SBN 263291)        BAILEY & GLASSER LLP
TYCKO & ZAVAREEI LLP                       1999 Harrison St., Suite 660
1828 L Street NW, Suite 1000              Oakland, CA 94612
Washington, D.C. 20036                    Telephone: (510) 207-8633
Telephone: 202-973-0900                   Facsimile: (510) 463-0291
Facsimile: 202-973-0950                   twalburg@baileyglasser.com
hzavareei@tzlegal.com
ksimplicio@tzlegal.com
                                         James L. Kauffman
                                         BAILEY & GLASSER LLP
V Chai Oliver Prentice                    1055 Thomas Jefferson Street, NW
TYCKO & ZAVAREEI LLP                       Washington, D.C. 20007
1970 Broadway, Suite 1070                Telephone: (202) 463-2101
Oakland, CA 94612                        Facsimile: (202) 463-2103
Telephone: (510) 254-6808                jkauffman@baileyglasser.com
Facsimile: (202) 973-0950
vprentice@tzlegal.com                    *Attorneys for Plaintiff*

Hassan A. Zavareei (SBN 181547)
Kristen G. Simplicio (SBN 263291)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: 202-973-0900
Facsimile: 202-973-0950
hzavareei@tzlegal.com
ksimplicio@tzlegal.com

BAILEY & GLASSER, LLP
1999 Harrison St., Suite 660
Oakland, CA 94612
Telephone: 510-207-8633
Facsimile: 510-463-0291
twalburg@baileyglasser.com

[Additional counsel in signature block]

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **VALERIE LEMBECK, ROBERT LANGE, and ANDREW MILLER**, *on behalf of themselves and all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>**ARVEST CENTRAL MORTGAGE CO.,**<br><br>Defendant. | Case No. 3:20-cv-03277-VC<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date: March 18, 2021<br>Time: 10:00 a.m.<br>Courtroom:<br>Judge: Vince Chhabria<br><br>Date Filed: May 14, 2020<br>Trial Date: None set |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND .................................................................................................. 2

III.    THE SETTLEMENT AGREEMENT ................................................................... 4

        A.    The Proposed Class ................................................................................... 4

        B.    Benefits to the Settlement Class ................................................................ 4

              1.    Monetary Benefits ............................................................................ 4

              2.    Injunctive Relief .............................................................................. 6

        C.    Settlement Administrator and Administration Costs ................................. 6

        D.    Class Member Release .............................................................................. 7

        E.    Proposed Plan of Notice ............................................................................ 7

        F.    Opt-Outs and Objections ........................................................................... 9

        G.    Attorneys' Fees and Costs and Service Award ......................................... 10

IV.     LEGAL STANDARD FOR PRELIMINARY APPROVAL .................................. 11

V.      ARGUMENT ...................................................................................................... 12

        A.    The Settlement Agreement warrants preliminary approval ....................... 12

              1.    The Settlement is the product of good-faith, informed, arms' length negotiations ... 13

              2.    The Settlement is fair, adequate, and reasonable ............................. 14

                    a.    The Strengths and Risks of Plaintiffs' Case ........................ 15

                    b.    The Risks, Complexity, and Likely Duration of Further Litigation ......... 19

                    c.    The Risk of Maintaining Class Action Status ...................... 20

                    d.    The Amount Offered in Settlement ...................................... 20

                    e.    The Allocation of the Settlement ........................................ 21

                    f.    The Extent of Discovery Completed and Stage of Proceedings .......... 22

                    g.    The Views of Class Counsel ............................................... 23

                    h.    Government Participant and Class Member Reaction ........... 23

              3.    The Class Representatives and Class Counsel have adequately represented the proposed class ......... 23

              4.    The proposed Fee and Expense Award is fair and reasonable ......... 24

        B.    Certification of the Settlement Class is appropriate ................................. 25

              1.    The Settlement Class Meets the Requirements of Rule 23(a) ......... 25

              2.    The Settlement Class satisfies the requirements of Rule 23(b)(3) ... 26

        C.    The Court should approve the proposed notice plan ................................. 27

              1.    The proposed notice plan is adequate and warrants preliminary approval ....... 27

VI.     CONCLUSION ................................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Inter-Con Sec. Sys. Inc.*,
  No. C-06-05248-MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)..........................................13

*Alexander v. Carrington Mortg. Servs., LLC*,
  No. RDB-20-2369, 2020 WL 7319252 (D. Md. Dec. 11, 2020)...................................................17

*Alvarez v. LoanCare, LLC*,
  No. 20-2187-CIV-ALTONAGA/Goodman, 2021 WL 184547 (S.D. Fla. Jan. 19, 2021) ............. 17, 18, 20

*Avina v. Marriott Vacations Worldwide Corp.*,
  No. SACV18685JVSJPRX, 2019 WL 8163642 (C.D. Cal. Oct. 25, 2019)..............................12, 23

*Bardak v. Ocwen Loan Servicing*,
  No. 19-1111, 2020 WL 5104523 (M.D. Fla. Aug. 12, 2020) ...........................................16, 17

*Barzelis v. Flagstar Bank*,
  No. 4:12-CV-611-Y, 2016 WL 6371290 (N.D. Tex. Sept. 26, 2016) ...............................................16

*Behfarin v. Pruco Life Ins. Co.*,
  No. CV 17-5290-MWF-FFMx, 2019 WL 7188575 (C.D. Cal. Nov. 26, 2019)......................................11, 12

*Bias v. Wells Fargo & Co.*,
  312 F.R.D. 528 (N.D. Cal. 2015) ......................................................................................26

*Bravo v. Gale Triangle, Inc.*,
  No. CV 16-03347 BRO (GJSx), 2017 WL 708766 (C.D. Cal. Feb. 16, 2017).................................24

*Calderon v. Wolf Firm*,
  No. SACV 16-1622-JLS(KESx), 2018 WL 6843723 (C.D. Cal. Mar. 13, 2018) .............................21

*Caldwell v. Freedom Mortg. Corp.*,
  No. 3:19-CV-2193-N, 2020 WL 4747497 (N.D. Tex. Aug. 14, 2020) ..........................................17

*Celano v. Marriott Int'l Inc.*,
  242 F.R.D. 544 (N.D. Cal. 2007) ..............................................................................25

*Chester v. TJX Cos.*,
  No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788 (C.D. Cal. Dec. 5, 2017)...................................19

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ...............................................................................................12

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1269 (9th Cir. 1992)................................................................................11

*Cohorst v. BRE Props.*,
  No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923 (S.D. Cal. Nov. 9, 2011)....................................13

*Cooper v. PennyMac Loan Servs., LLC*,
  --- F. Supp. 3d ---, 2020 WL 8073604 (S.D. Fla. Dec. 23, 2020)..............................................16

*Dees v. Nationstar Mortg. LLC*,
  ---F. Supp. 3d ---, 2020 WL 6749036 (S.D. Tex. 2020) ................................................17

*Dennis v. Kellogg Co.*,
  No. 09-cv-1786-L(WMc), 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ............................ 19

*Duffee v. Collecto, Inc.*,
  No. 3-12-CV-0187-B, 2012 WL 652228 (N.D. Tex. Feb. 8, 2012),
  *report and recommendation adopted*, 2012 WL 666150 (N.D. Tex. Feb. 28, 2012) ................. 17

*Eisen v. Carlisle and Jacquelin*,
  417 U.S. 156 (1974) ................................................................................ 27

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ..................................................................... 26

*Felix v. WM. Bolthouse Farms, Inc.*,
  No.: 1:19-cv-00312-AWI-JLT, 2020 WL 2175352 (E.D. Cal. May 4, 2020) ....................... 26

*Flores v. Collection Consultants of Cal.*,
  No. SA CV 14-0771-DOC (RNBx), 2015 WL 4254032 (C.D. Cal. Mar. 20, 2015) .................. 16

*Gonzalez-Tzita v. City of L.A.*,
  No. CV 16-0194 FMO(Ex), 2019 WL 7790440 (C.D. Cal. Dec. 9, 2019) ........................... 25

*Grimm v. American Eagle Airlines, Inc.*,
  No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376 (C.D. Cal. Sept. 24, 2014) ................. 20

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................ 12, 14, 26

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ..................................................................... 26

*Harris v. Vector Mktg. Corp.*,
  No. C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ................................... 24

*Hickcox-Huffman v. U.S. Airways, Inc.*,
  No. 10-cv-05193, 2019 WL 1571877 (N.D. Cal. April 11, 2019) .................................. 24

*Hillman v. Lexicon Consulting, Inc.*,
  No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869 (C.D. Cal. Apr. 27, 2017) ..................... 23

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................................. 12, 14

*In re Heritage Bond Litig.*,
  No. 02-ML-1475-DT(RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) ........................... 24

*In re Mego Fin. Corp.*,
  213 F.3d 454 (9th Cir. 2000) ..................................................................... 11

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ..................................................................... 28

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) .................................................................... 11

*Kemp v. Wells Fargo Bank, N.A.*,
  No. 17-cv-01259-MEJ, 2017 WL 4805567 (N.D. Cal. Oct. 15, 2017) .............................. 16

*Knutson v. Schwan's Home Serv., Inc.,*
    No. 3:12-cv-00964-GPC-DHB, 2014 WL 3519064 (S.D. Cal. 2014) .......................... 29

*Lane v. Facebook, Inc.,*
    696 F. 3d 811 (9th Cir. 2012) ............................................................................. 28, 29

*Lang v. Ocwen Loan Servicing, LLC,*
    No. 3:20-cv-81-J-20MCR, 2020 WL 5104522 (M.D. Fla. July 17, 2020) .................. 16

*Lish v. Amerihome Mortg. Co.,*
    No. 220-CV_07147JFWJPRX, 2020 WL 6688597 (C.D. Cal. Nov. 10, 2020) .............. 16

*Lloyd v. Navy Federal Credit Union,*
    No. 17-cv-1280-BAS-RBB, 2018 WL 2269958 (S.D. Cal. May 28, 2019) .................. 21

*Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.,*
    244 F.3d 1152 (9th Cir. 2001) ................................................................................... 27

*Longest v. Green Tree Servicing LLC,*
    308 F.R.D. 310 (C.D. Cal. 2015) ......................................................................... 26, 27

*Ma v. Covidien Holding, Inc.,*
    No. SACV 12-02161, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) .............................. 12

*Maine State Ret. Sys. V. Countrywide Fin. Corp.,*
    No. 2:10-cv-00302-MRP(MANx), 2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) .......... 13

*Nachshin v. AOL LLC,*
    663 F.3d 1034 (9th Cir. 2011) ..................................................................................... 6

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) .............................................................................. 23

*Noroma v. Home Point Fin. Corp.,*
    No. 17-cv-07205, 2019 WL 1589980 (N.D. Cal. April 12, 2019) .............................. 25

*Oya v. Wells Fargo Bank, N.A.,*
    No. 3:18-cv-01999, 2019 WL 3239021 (S.D. Cal. July 17, 2019) .............................. 16

*Paz v. AG Adriano Goldschmeid, Inc.,*
    No. 14CV1372DMS(DHB), 2016 WL 4427439 (S.D. Cal. Feb. 29, 2016) .................. 19

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) .................................................................................................. 27

*Powers v. Eichen,*
    229 F.3d 1249, 1256-57 (9th Cir. 2000) ................................................................... 24

*Rannis v. Recchia,*
    380 Fed. App'x 646 (9th Cir. 2010) ......................................................................... 25

*Rodriguez v. W. Publ'g Corp.,*
    563 F. 3d 948 (9th Cir. 2009) ................................................................................... 28

*Rodriguez v. West Pub'lg Corp.,*
    563 F.3d 948 (9th Cir. 2009) .................................................................................... 13

*Rosenburg v. I.B.M.,*
    No. CV06–00430PJH, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007) ...................... 28

*Russell v. Kohl's Dep't Stores, Inc.,*
    755 Fed. App'x 605 (9th Cir. 2018) ...................... 14, 15

*Sarabri v. Weltman, Weinberg & Reis Co., L.P.A,*
    No. 10cv1777 AJB (NLS), 2012 WL 3809123 (S.D. Cal. Sept. 4, 2012) ...................... 28

*Spann v. J.C. Penney Corp.,*
    314 F.R.D. 312 (C.D. Cal. 2016) ...................... 11

*Tapia v. Zale Del. Inc.,*
    No. 13cv1565-PCL, 2017 WL 1399987 (S.D. Cal. Apr. 18, 2017) ...................... 28

*Turner v. PHH Mortg. Corp.,*
    467 F. Supp. 3d 1244 (M.D. Fla. 2020) ...................... 16

*Tyson Foods, Inc. v. Bouaphakeo,*
    136 S. Ct. 1036 (2016) ...................... 27

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ...................... 25

*Walters v. Target Corp.,*
    No. 3:16-cv-1678-L-MDD, 2019 W 6696192 (S.D. Cal. Dec. 6, 2019) ...................... 21

*Williams v. Wells Fargo Bank, N.A.,*
    884 F.3d 239 (5th Cir. 2018) ...................... 17

*Wolin v. Jaguar Land Rover N. Am., LLC,*
    617 F.3d 1168 (9th Cir. 2010) ...................... 25, 27

**Statutes**

15 U.S.C. § 1692f ...................... 16

15 U.S.C. 1692f(1) ...................... 2

28 U.S.C. § 1715 ...................... 9

**Rules**

Fed. R. Civ. P. 23(a) ...................... 25

Fed. R. Civ. P. 23(a)(3) ...................... 25

Fed. R. Civ. P. 23(a)(4) ...................... 26

Fed. R. Civ. P. 23(b)(3) ...................... 25, 26, 27

Fed. R. Civ. P. 23(c)(2)(B) ...................... 27

Fed. R. Civ. P. 23(e) ...................... 11, 12

FED. R. CIV. P. 23(e)(1) .................................................................................................... 25

FED. R. CIV. P. 23(e)(2)(A) .............................................................................................. 23

FED. R. CIV. P. 23(e)(2)(B) .............................................................................................. 13

FED. R. CIV. P. 23(e)(2)(C)(ii) .......................................................................................... 22

FED. R. CIV. P. 23(e)(2)(c)(iii) ......................................................................................... 24

FED. R. CIV. P. 23(e)(3) .................................................................................................... 12

**Treatises**

*Newberg on Class Actions*, § 11.41 (4th ed. 2013) ....................................................... 13

## I.     INTRODUCTION

Plaintiffs Valerie Lembeck, Andrew Miller, and Robert Lange, individually and on behalf of the proposed Settlement Class,[1] seek preliminary approval of a proposed Settlement of claims against Defendant Arvest Central Mortgage Company ("Arvest"). The Settlement Agreement, if approved, will create a $1,474,314 Common Fund and will resolve the claims of Plaintiffs and the Settlement Class Members deriving from Arvest's practice of charging fees for making mortgage payments online or over the phone ("Pay-to-Pay Fees"). The Common Fund, which represents approximately 49% of damages, will provide cash payments to Settlement Class Members, as well as Administrative Costs to provide notice and administer the settlement, and any Fee and Expense Award and Service Awards that the Court may approve. Settlement Class Members need not submit a claim form in order to receive monetary compensation *pro rata* according to the number of Pay-to-Pay Fees they were charged. In addition to the Common Fund, the Settlement includes important and valuable injunctive relief: Arvest has agreed to cease charging Pay-to-Pay Fees in California, Florida, and Texas (the three states included in the Settlement Class) for at least three years.[2]

The proposed Settlement should be preliminarily approved. It is the first settlement in a case challenging fees of this kind to obtain relief in excess of 40% of fees collected from the class, and it is the first to include injunctive relief stopping a major mortgage loan servicer from charging of Pay-to-Pay Fees for any length of time. Indeed, the injunctive relief will save Settlement Class Members significant monetary expense as they pay their mortgages in the future. This relief was secured after extensive arms-length negotiations by experienced and informed counsel. As such, the proposed Settlement warrants preliminary approval, as the terms are fair, reasonable, and adequate. Accordingly, Plaintiffs request that the Court (1) preliminarily approve the proposed Settlement, (2) certify the Settlement Class for settlement purposes only, (3) appoint Valerie Lembeck, Andrew Miller, and Robert Lange as Class Representatives, (4)

---

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the parties' Settlement Agreement, attached as Exhibit 1 to the Declaration of Hassan A. Zavareei ("Zavareei Decl.").

[2] Arvest has also ceased charging Pay-to-Pay Fees in the rest of the country.

appoint Hassan A. Zavareei and Kristen G. Simplicio of Tycko & Zavareei LLP and James L. Kauffman of Bailey Glasser LLP as Class Counsel, (5) order that Class Notice be distributed to the Settlement Class, and (6) schedule a Final Approval Hearing. Arvest does not oppose the relief sought in this Motion.

## II.   BACKGROUND

To challenge Arvest's practice of charging and collecting illegal processing fees from borrowers paying their monthly mortgage by phone or online, Plaintiffs Valerie Lembeck, Andrew Miller, and Robert Lange commenced separate actions in California, Florida, and Texas, respectively. Plaintiff Lembeck initiated a class action lawsuit in this Court, alleging that Arvest violated California's Rosenthal Fair Debt Collections Act ("Rosenthal Act") and Unfair Competition Law ("UCL"). *See* Compl., Dkt. 1. Plaintiff Miller initiated a class action currently pending in state court in Florida against Arvest, alleging violations of the Florida Consumer Collection Practices Act ("FCCPA") and the Florida Deceptive Unfair Trade Practices Act ("FDUTPA"). *Andrew Miller v. Arvest Central Mortgage Co.*, No. 20-010342-CA-01 (Fla. Cir. Ct., Miami-Dade Cty.). And Plaintiff Lange initiated a class action in the Eastern District of Arkansas against Arvest, alleging violations of the Texas Debt Collection Act ("TDCA"). *Robert Lange v. Arvest Central Mortgage Co.*, No. 4:20-cv-293-LPR (E.D. Ark.). Each Plaintiff also brought breach of contract claims. Although the three putative class actions were brought separately, each is based on one central harm: Arvest charged and collected millions of dollars in $5 and $10 Pay-to-Pay Fees from homeowners, in addition to their regular mortgage payments, in violation of state law. The Rosenthal Act, the FCCPA, and the TDCA are all modeled on the federal Fair Debt Collection Protections Act ("FDCPA"), which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. 1692f(1). Plaintiffs alleged that these fees violated California, Florida, and Texas state law because the fees were not expressly authorized by their mortgage agreements or any statute.

In the *Lembeck* matter, Arvest moved to dismiss the Complaint, Plaintiff Lembeck opposed, and the Court held a hearing on October 22, 2020. *See* Dkts. 24, 39, 45-46. On November 3, 2020, the Court issued an order granting in part and denying in part the motion, permitting all but one of Plaintiff Lembeck's claims to proceed. *See* Dkt. 47. The parties then commenced discovery and Plaintiff Lembeck served

1  written discovery requests and a notice of deposition pursuant to Federal Rule of Civil Procedure 30(b)(6).

2  Zavareei Decl. ¶ 4. In the *Lange* matter, Arvest moved to dismiss the Complaint and Plaintiff Lange

3  opposed. *See Lange* Dkts. 13, 16, 19. The *Lange* court has not ruled, and that case has been stayed pending

4  approval of the Settlement. *See Lange* Dkt. 35. In the *Miller* matter, Arvest removed the case to federal court

5  and moved to dismiss.  Plaintiff Miller moved to remand and opposed the motion to dismiss. The *Miller*

6  court remanded the case to state court on December 18, 2020. The parties have notified the *Miller* court of

7  the Settlement and requested that the court stay proceedings pending approval of the Settlement. To

8  preserve the resources of the Parties and the Court, the Parties agreed that Plaintiffs' claims should be

9  consolidated and a single Settlement Agreement considered and approved by one Court, rather than

10 proceeding piecemeal. Thus, in advance of this Motion, the Plaintiffs have filed an Amended Complaint

11 consolidating their claims before this Court.

12         After lengthy discussions, the Parties agreed to engage in mediation on January 22, 2021, with the

13 assistance of Jed D. Melnick, an experienced mediator with JAMS, to explore whether a negotiated

14 resolution was possible. *See* Zavareei Decl. ¶ 6. In advance of the mediation, Arvest provided data

15 regarding the Pay-to-Pay Fees collected from borrowers in California, Florida, and Texas to Class Counsel.

16 Based on that data, Class Counsel prepared a mediation statement and provided it to both Mr. Melnick and

17 Arvest's counsel. *Id.* ¶ 7.

18         On January 22, 2021, the parties mediated before Mr. Melnick for a full day. *Id.* ¶ 11. Class Counsel

19 entered the mediation fully informed of the merits of the Settlement Class members' claims and were

20 prepared to continue to litigate rather than accept a settlement that was not in the Plaintiffs' and Settlement

21 Class's best interests. *Id.* ¶ 10. After a full day of hard-fought negotiations, where both sides made

22 presentations to the mediator and all attendees, the parties reached an agreement on all material terms,

23 including the amount of the Common Fund and the injunctive relief. *Id.* ¶¶ 11-12. Class Counsel prepared

24 the first draft of the Settlement Agreement, and the parties then negotiated the precise terms and language

25 of the Agreement now before the Court. *Id.*

26 ///

27 ///

## III.   THE SETTLEMENT AGREEMENT

### A.   The Proposed Class

The Settlement Agreement contemplates certification of the following Settlement Class for settlement purposes only:

> All persons who (1) were borrowers on residential mortgage loans on properties located in Florida, Texas, or California to which Arvest acquired servicing rights, and (2) paid a fee to Arvest for making a loan payment by telephone, IVR, or the internet, between January 1, 2017 and December 31, 2020.

Zavareei Decl. Ex. 1 ("SA") § II.EE. The proposed Settlement Class is identical to the class definition included in the Amended Complaint filed on February 26, 2021.[3] The Class Period ends on December 31, 2020, because Arvest ceased collecting Pay-to-Pay Fees as of that date.

### B.   Benefits to the Settlement Class

#### 1.   Monetary Benefits

The Settlement Agreement provides monetary benefits in the form of a Common Fund of $1,474,314, from which shall be paid (1) all payments to Settlement Class members, (2) all Administrative Costs, (3) any taxes owed by the Gross Settlement Amount (but not any taxes owed by any individual Class Counsel, Plaintiffs, or Settlement Class Members), and (4) any Fee and Expense Award approved by the Court. *See* SA § IV.A. The settlement amount represents 49.7% of the total $2,966,198 pay-to-pay fees collected by Arvest from the class during the class period. After payment of costs of administration and notice and any fees, expenses, and service award authorized by the Court, the Net Settlement Fund will be distributed to Settlement Class Members *pro rata. Id.* § IV.B.

Settlement Class Members do not have to submit claims or take any other affirmative step to receive benefits under the Settlement. Instead, Arvest will provide the Settlement Administrator with a Settlement Class Member List that includes the names, last known mailing addresses, the last known email

---

[3] In Ms. Lembeck's original complaint, the class definition covered California borrowers who paid the fees "during the applicable statutes of limitations," Dkt. No. 1, and similar definitions were included in the complaints in Texas and Florida. Because of the variety of claims and related statutes of limitations at issue, the Parties agreed to settle claims over a four year period.

addresses of the Settlement Class Members (if the Court's Preliminary Approval Order provides for email notice), and the dates and amounts of each Pay-to-Pay Fee paid during the Class Period. *Id.* §§ II.GG, VI. Arvest estimates that the Settlement Class includes approximately 48,059 Settlement Class members, and that it has email addresses for roughly 85% of them. Zavareei Decl. ¶ 37.

Each Settlement Class Member who paid at least one Pay-to-Pay Fee during the Class Period shall be entitled to receive a *pro rata* share of the Net Settlement Fund. SA § IV.B. For each loan on which a Settlement Class Member has paid Pay-to-Pay Fees, the Settlement Administrator shall allocate the amount of the Net Settlement Fund that represents the proportional amount of Pay-to-Pay Fees charged by Arvest within the Class Period on that loan. *Id.* Co-borrowers on a single class account shall be entitled to a single total Settlement Payment per account, but all fees paid will be eligible for a *pro rata* share. *Id.* Settlement Class Members will automatically receive their payments by check and may also elect a digital payment option via the Settlement Website. *Id.* Prior to mailing checks, the Settlement Administrator shall attempt to update the last known address of the Settlement Class Member through the National Change of Address database. *Id.* If a check is returned and marked "Undeliverable," the Settlement Administrator shall make reasonable efforts to locate the Settlement Class Member, reissue the check, and send it to a forwarding address. *Id.* Any checks that are not cashed within 90 days shall be voided and the money returned to the Net Settlement Fund. For good cause shown by the Settlement Class Member involved, the Settlement Administrator may reissue a check for up to an additional 90-day period following the original 90-day period. *Id.*

After 180 days from the date of issuance of the initial checks, any remaining funds in the Net Settlement Fund shall be distributed to Settlement Class Members via a secondary distribution. If the amount of remaining funds is so minimal that a secondary distribution would be impracticable or infeasible, then upon approval to the Court, the remaining funds shall be distributed to the *Cy Pres* Recipient. Any funds remaining following a secondary distribution shall be distributed to the *Cy Pres* Recipient. The Parties propose that the Court approve as *Cy Pres* Recipient NeighborWorks America, a 501(c)(3) charitable organization that works with nonprofits around the country on housing issues. One area in which it works is on issues relating to financial health, and ensuring homeowners have access to

information to make smart, financial decisions to ensure they can pay their mortgages and remain in their homes. *See* https://www.neighborworks.org/Homes-Finances/Financial-Health. Because Pay-to-Pay fees are typically paid by those homeowners who live on more fixed budgets and need more control over the timing of their mortgage payments than payment by mail or automatic debits would allow, NeighborWorks' mission is aligned with the objectives of the litigation and the Settlement Class Members' interests. *See Nachshin v. AOL LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011). In no event shall any remaining funds be returned to Arvest.

### 2.    Injunctive Relief

In addition to the monetary relief, the Settlement Agreement also includes critical injunctive relief. As of January 1, 2021, Arvest ceased charging or collecting pay-to-pay fees to any borrower in the United States. And as a result of the Settlement of this case, Arvest has agreed to refrain from charging or collecting such fees from borrowers in the United States for at least three years after the entry of a Final Approval Order, regardless of whether subsequent changes in law authorize such fees. SA § IV.C. Now, Settlement Class Members whose loans are still serviced by Arvest will be able to make payments online or over the phone without incurring an additional fee. Arvest collected an average of approximately $820,000 a year from Settlement Class Members, and thus, injunctive relief is significant for Settlement Class Members because it may result in $2.5 million or more in savings over the next three years. While there have been settlements of several similar cases in recent years,[4] to the best of Class Counsel's knowledge, none of them have included injunctive relief prohibiting the defendant from charging further Pay-to-Pay Fees. Indeed, at least one settlement, *McWhorter*, included an amendment to Settlement Class Members' mortgage documents to *permit* the defendant to continue charging the challenged fees.

### C.    Settlement Administrator and Administration Costs

Subject to Court approval, the Settlement Administrator is KCC Class Action Services, LLC

---

[4] Counsel has prepared a summary of similar settlements involving Pay-to-Pay Fees, which is attached as Appendix A. The highest settlement obtained to date involved refunds of 38.64% the amount collected, and no agreement to stop charging the fees. *See Sanders v. Loancare, LLC*, Case No. 2:18-CV-09376-PA (RAOx) (C.D. Cal.), Dkt. 155.

("KCC"), a leading class action administration firm in the United States. Zavareei Decl. ¶ 35. The Parties reviewed proposals from three prominent settlement administrators before deciding on KCC based on overall cost and value to the Settlement Class. *Id.* The proposals included proposals for email and postcard notice, as well as a long form notice to be available on a settlement website, along with a toll-free number for Settlement Class Members to call for information about the Settlement. *Id.* ¶ 35. KCC is able to offer the option for Settlement Class Members to elect to receive their distributions via digital payment as well as paper check. *Id.* ¶ 35. This option will reduce the cost of administration and increase the speed at which Settlement Class members can be paid.

All Administrative Costs shall be paid from the Gross Settlement Fund. SA § IV.A. Currently, the Settlement Administrator estimates that the costs of notice will be approximately $95,000 Zavareei Decl. § 36. The Settlement Administrator will oversee the provision of Class Notice to the Settlement Class Members and administration of the Common Fund.

### D.      Class Member Release

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released the Released Entities from all claims that were or could have been asserted by the Class Representatives or Settlement Class Members arising out of, based upon, or related in any way to the charging, collection, or attempted collection of Pay-to-Pay Fees from the beginning of the world to the Effective Date, which the Settlement Class Member ever had or may have in the future. SA § V. The release is appropriately tailored, in that it covers claims arising from the identical factual predicate to the claims asserted in the operative Complaint.

### E.      Proposed Plan of Notice

The Parties' proposed Notice Plan is designed to reach as many Settlement Class Members as possible and is the best notice practicable under the circumstances of the instant case. Zavareei Decl. ¶ 38. Within 14 days or such other time as provided in the Preliminary Approval Order, Arvest, at its own expense, will compile the Settlement Class Member List and provide it to the Settlement Administrator and Class Counsel. SA § VI. As soon as practicable, but starting no later than thirty (30) days after receipt of the Settlement Class Member List, the Settlement Administrator shall cause the Email Notice to be sent to all

Settlement Class Members for whom the Settlement Class Member List includes an email address. *Id.*

As soon as practicable, but starting no later than thirty (30) days after receipt of the Settlement Class Member List, the Settlement Administrator shall cause the Postcard Notice to be sent to all Settlement Class Members for whom no email address appears on the Settlement Class Member List. *Id.* Prior to mailing Class Notice, the Settlement Administrator will update the last known addresses of the members of the Settlement Class using the National Change of Address database. *Id.* The Settlement Administrator shall also cause the Postcard Notice to be sent to all Settlement Class Members whose Email Notices are returned undeliverable, after running those Settlement Class Members' last known addresses through the National Change of Address database. *Id.* If the Postcard Notice is returned with a forwarding address, the Settlement Administrator shall make one attempt to remail the Postcard Notice to that forwarding address, as soon as possible before the Response Deadline. *Id.* If the Postcard Notice is returned undeliverable without a forwarding address, the Settlement Administrator shall make a reasonable attempt to locate an updated address and make one attempt to remail the Postcard Notice to the updated address, as soon as possible before the Response Deadline. *Id.*

The Settlement Administrator shall mail or email the Long Form Notice to any Settlement Class member who requests a copy. *Id.*

Prior to the date on which the Settlement Administrator mails the Postcard Notice, the Settlement Administrator shall establish the Settlement Website. *Id.* The Settlement Website shall contain: (1) the Long Form Notice in downloadable PDF format in both English and Spanish; (2) the Long Form Notice in HTML format with a clickable table of contents, described as answers to frequently asked questions; (3) a contact information page with contact information for the Settlement Administrator, and addresses and telephone numbers for Class Counsel and Defendant's Counsel; (4) the Settlement Agreement; (5) the signed Preliminary Approval Order and publicly filed motion papers and declarations in support thereof; (6) the operative complaints in each of the Actions; and (6) when they become available, the Fee and Service Award Application, the motion for entry of the Final Approval Order, and any motion papers and declarations filed publicly in support thereof. *Id.* The Settlement Website shall remain accessible until 30 days after the Settlement Administrator has completed its obligations under the Settlement Agreement. *Id.*

1    The Settlement Administrator shall also establish a 24-hour toll-free telephone line with

2 information about frequently asked questions about the Settlement. The number shall be included in the

3 Class Notice and posted on the Settlement Website. *Id.*

4    The Settlement Administrator will also ensure that the necessary and timely notice is provided to

5 any state and federal officers as required by the Class Action Fairness Act, 28 U.S.C. § 1715. *Id.*

6    **F.    Opt-Outs and Objections**

7    The Class Notice will advise Settlement Class Members of their right to opt out of the Settlement

8 or to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs, and expenses

9 and/or Service Award to the Class Representative, and of the associated deadlines. SA § VII. The Class

10 Notice will also advise Settlement Class Members that the Court will accept substantial compliance with the

11 instructions for opting out from or objecting to the Settlement.

12    Settlement Class Members who choose to opt out must submit a written request for exclusion. *Id.*

13 Any request for exclusion must be postmarked on or before the "Response Deadline"—105 days after

14 entry of the Preliminary Approval Order. *Id.* §§ II.CC, VII. Any request for exclusion must include the

15 name of the case, and the name, address, phone number, and signature of the borrower or borrowers

16 seeking exclusion and must contain language clearly indicating a request for exclusion. *Id.* If there are co-

17 borrowers on the loan all co-borrowers must sign the request for exclusion. *Id.* Any Settlement Class

18 Member who does not submit a request to opt out in accordance with the deadlines and other

19 requirements will be bound by the Settlement absent a court order to the contrary. *Id.*

20    Settlement Class Members who wish to object to the Settlement must mail a written objection,

21 postmarked on or before the Response Deadline, to the Court c/o the Class Action Clerk, United States

22 District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102

23 or file their objection in person on or before the Response Deadline at any location of the United States

24 District Court for the Northern District of California. *Id.* All objections must be in writing and personally

25 signed by the Settlement Class Member and include: (1) the objector's name, address, email address if any,

26 and telephone number; (2) the case caption; (3) the specific factual basis and legal grounds for the

27 objection; (4) a list of all cases in which the objector has objected to a class action settlement, including

case name, court, and docket number; (5) if the objector is represented by counsel, a list of all cases in which the objector's counsel has represented an objector in objecting to a class action settlement, case name, court, and docket number; (6) a statement indicating whether the Settlement Class Member and/or their lawyer(s) intend to appear at the Final Fairness Hearing; (7) a list of witnesses, if any, that the objecting Settlement Class Member intends to call; and (8) whether the objection relates only to the objector, or to a subset of the Settlement Class, or to the entire Settlement Class. *Id.* The objector should also comply with Local Rule 3-15 and promptly file a Certification of Interested Entities or Persons in the docket. *Id.*

Any Settlement Class Member who has not submitted a timely request for exclusion may appear at the Final Fairness Hearing either in person or through an attorney. However, if the Settlement Class Member intends to appear through counsel, the Settlement Class Member must have submitted a written objection pursuant to this section. Any lawyer who intends to appear at the Final Fairness Hearing also must enter a written Notice of Appearance of Counsel with the Clerk of the Court no later than the Response Deadline. Any Settlement Class Member who intends to request the Court to allow him or her to call witnesses at the Final Fairness Hearing must make such a request in a written brief, which contains a list of such witnesses and a summary of their requested testimony.

No person who has opted out of the Settlement may object to it. Any Settlement Class Member who does not provide a timely written objection or who does not make a record of his or her objection at the Final Approval Hearing shall be deemed to have waived any objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement, Fee and Service Awards Application, or the Fee and Expense Award or Service Awards.

### G. Attorneys' Fees and Costs and Service Award

The Settlement Agreement contemplates Class Counsel petitioning the Court for attorneys' fees, as well as documented, customary costs incurred by Class Counsel. SA § IV.E. The Settlement Agreement provides that Class Counsel may seek attorneys' fees in an amount not to exceed one third of the Gross Settlement Fund (33.33%) as well as reasonable expenses incurred in the litigation. *Id.* Any approved Fee and Expense Award will be paid from the Gross Settlement Fund prior to distribution to the Settlement

Class Members. *Id.* § IV.B.

On or before 21 days prior to the Response Deadline, Class Counsel will file a petition for attorneys' fees and costs explaining why the requested Fee and Expense Award is reasonable. *Id.* § IV.E. Class Counsel will provide lodestar information sufficient for the Court to perform a lodestar cross-check should the Court choose to exercise its discretion to perform one. Arvest has not agreed to any award of attorneys' fees or expenses and may respond to the Fee and Service Award Application as it sees fit.

Class Counsel may also petition the Court for up to $5,000 each for Valerie Lembeck, Andrew Miller, and Robert Lange as Service Awards as compensation for their time and effort in the Action. *Id.* § IV.D. Any approved awards will be deducted from the Gross Settlement Fund prior to distribution to the Settlement Class Members. *Id.* § IV.B. Plaintiffs will submit declarations detailing their participation in the Action along with the Fee and Service Award Application.

Neither final approval, nor the size of the Common Fund, are contingent upon approval of the full amount of requested Fee and Expense Award or Service Awards. *Id.* § IV.D-E.

## IV.   LEGAL STANDARD FOR PRELIMINARY APPROVAL

The Ninth Circuit has a strong judicial policy favoring the settlement of class actions. *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1269, 1276 (9th Cir. 1992). The settlement of complex cases greatly contributes to the efficient utilization of scarce judicial resources and achieves the speedy provision of justice. Federal Rule of Civil Procedure 23 requires court approval of a class action settlement, a decision that is committed to the sound discretion of the trial judge. FED. R. CIV. P. 23(e). *See also In re Mego Fin. Corp.*, 213 F.3d 454, 458 (9th Cir. 2000) (recognizing that the trial judge is "exposed to the litigants, and their strategies, positions, and proof").

 "Approval of a class action settlement requires a two-step process — a preliminary approval followed by a later final approval." *Behfarin v. Pruco Life Ins. Co.*, No. CV 17-5290-MWF-FFMx, 2019 WL 7188575, at *5 (C.D. Cal. Nov. 26, 2019) (quoting *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016)). Preliminary approval is appropriate where the "proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of

possible approval." *Ma v. Covidien Holding, Inc.*, No. SACV 12-02161, 2014 WL 360196, at *10 (C.D. Cal. Jan. 31, 2014). Courts in this District generally consider at preliminary approval whether a proposed settlement is both procedurally and substantively fair and reasonable. *See, e.g., Behfarin*, 2019 WL 7188575, at *6. The question for the Court is whether the settlement is "within the range of reasaonableness." *Ma*, 2014 WL 360196, at *10.

Courts in the Ninth Circuit consider specific factors when approving a settlement. *See e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 964 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *Avina v. Marriott Vacations Worldwide Corp.*, No. SACV18685JVSJPRX, 2019 WL 8163642, at *5 (C.D. Cal. Oct. 25, 2019). These factors include: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *See Churchill Vill.*, 361 F.3d at 575; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Rule 23, as amended in 2018, provides additional guidance to federal courts considering whether to grant preliminary approval of a class action settlement. *See* FED. R. CIV. P. 23(e)(3). Those factors include whether: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided is adequate; and (D) whether the proposed settlement treats class members equitably relative to each other. Plaintiffs will address the factors relevant to both standards, many of which overlap.

## V.    ARGUMENT

### A.    The Settlement Agreement warrants preliminary approval.

Each of the relevant factors weighs in favor of Preliminary Approval of this Settlement. The Settlement, which was reached in the absence of collusion and is the result of good faith, informed, arms' length negotiation between competent counsel, in conjunction with an experienced mediator, satisfies each factor for preliminary approval in the Ninth Circuit and under Rule 23. *See Hanlon*, 150 F.3d at 1026; FED. R. CIV. P. 23(e).

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiffs believe their claims are meritorious and that they would prevail if this case proceeded to trial. Arvest argues that Plaintiffs' claims are unfounded, denies any liability, and has indicated a willingness to litigate vigorously. Plaintiffs face the challenge of a motion for summary judgment and opposition to a motion for class certification, as well as the risk of a loss at trial. The only thing that is certain is that if this case continues in litigation, the Settlement Class Members will need to wait much longer before receiving any recovery. In Class Counsel's experience and informed judgment, the benefits of settling outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with litigation, discovery, and possible appellate review.

**1.    The Settlement is the product of good-faith, informed, arms' length negotiations.**

The Ninth Circuit puts "a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. West Pub'lg Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see* FED. R. CIV. P. 23(e)(2)(B). A presumption of fairness applies when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval. *See, e.g.*, *Maine State Ret. Sys. V. Countrywide Fin. Corp.*, No. 2:10-cv-00302-MRP(MANx), 2013 WL 6577020, at *12 (C.D. Cal. Dec. 5, 2013)(citing *Newberg on Class Actions*, § 11.41 (4th ed. 2013)). Moreover, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-05248-MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007). *See also Cohorst v. BRE Props.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011)("[V]oluntary mediation before a retired judge in which the parties reached an agreement-in-principle to settle the claims in the litigation are highly indicative of fairness.").

Here, the Settlement is the result of intensive, arms' length negotiation between experienced attorneys who are familiar with the legal and factual issues in this Action, as well as class action litigation generally. Before agreeing upon the terms of the Settlement, the Parties mediated for a full day before Jed. D. Melnick of JAMS, and engaged in subsequent negotiations supervised by Mr. Melnick. Zavareei Decl. ¶¶ 11-12. In advance of that mediation, Arvest provided Plaintiffs with its internal data demonstrating the

size of the Settlement Class and the amount of damages in issue. *Id.* Because Class Counsel has litigated and settled other cases involving similar factual and legal issues, Class Counsel understands what information is critical to determine membership in the Settlement Class and how to calculate damages. *Id.* ¶ 8. The Parties' vigorous negotiation of the claims in this action evidences an absence of collusion and the presence of fairness and good faith.

In addition to these facts, the Settlement passes muster under *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011), which identifies the indicia of collusion that courts must look for when a class action settles prior to class certification. *See id.* at 947. These "subtle signs" include when the class receives no monetary distribution, or when class counsel receives a disproportionate share of the settlement; the presence of a clear sailing arrangement; and a provision for any portion of the fund to revert to the defendant. *Id.* Here, Settlement Class Members are receiving substantial cash benefits and valuable injunctive relief, and Class Counsel intends to seek a Fee and Expense Award well within the range of reasonableness. There is no clear sailing agreement; rather, Arvest has reserved the right to respond to any Fee and Service Award Application as it sees fit. And there is no reversionary component: any unclaimed funds will be paid to a *Cy Pres* Recipient, and under no circumstances will any funds be returned to Arvest. The absence of any indicia of collusion under *Bluetooth* provides further evidence that the Settlement is non-collusive and fair.

### 2.    The Settlement is fair, adequate, and reasonable.

A preliminary review of the relevant factors supports the conclusion that the Settlement falls within the "range of reason" such that the Court should preliminarily approve the Settlement, order that notice be sent to the Settlement Class, and schedule a Final Approval Hearing. The Ninth Circuit has adopted the following eight-factor test for determining whether a settlement is fair, reasonable, and adequate:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and stage of the proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement.

*Russell v. Kohl's Dep't Stores, Inc.*, 755 Fed. App'x 605, 608 (9th Cir. 2018) (quoting *Hanlon*, 150 F.3d at 1026). While the Class Members cannot react to the settlement until after notice goes out, the Court can "properly

consider[] the *Hanlon* factors in deciding that the settlement [i]s fair, reasonable, and adequate" at the preliminary approval stage. *See Russell*, 755 Fed. App'x at 608 (affirming district court's review of *Hanlon* factors in preliminary approval order).

### a.    The Strengths and Risks of Plaintiffs' Case

*First*, the Settlement is fair, adequate, and reasonable in light of the strengths and risks of Plaintiffs' case. While confident in the strength of their claims, Plaintiffs and Class Counsel are also pragmatic and recognize the risks inherent in litigation of this magnitude. *See* Zavareei Decl. ¶ 16. Should the case proceed in litigation, Plaintiffs could see their claims dismissed or narrowed by a motion for summary judgment, at trial, or on a subsequent appeal. *Id.* They also face the risk that class certification could be denied. *Id.* ¶ 17. Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in a *zero* recovery to the class. *Id.* ¶ 18. And even if Plaintiffs prevailed at trial, any recovery would likely be delayed for years by an appeal. *Id.* ¶ 19. This is particularly so given that Plaintiffs Miller and Lange are proceeding in different courts that have not yet denied motions to dismiss filed by Arvest. *Id.* ¶ 21.

Plaintiffs face substantial risks to their claims should the Settlement not be approved. In that event, the Amended Complaint will be treated as null and void, and Ms. Lembeck will proceed on behalf of a California class, Mr. Lange will proceed in the Eastern District of Arkansas on behalf of a Texas class, and Mr. Miller will proceed in Florida state court on behalf of a Florida class. Each case faces serious risks. The Eastern District of Arkansas has not yet ruled on Arvest's motion to dismiss Plaintiff Lange's claims, and Arvest has not moved to dismiss Plaintiff Miller's claims but presumably would do so. In both cases, Plaintiffs Lange and Miller would need to persuade the court that Pay-to-Pay Fees violate provisions of Texas and Florida debt collection law incorporating the substantive provisions of the FDCPA. And they would need to persuade the courts of that position not only at the motion to dismiss stage, but at summary judgment and through trial.

With respect to Ms. Lembeck, while the Court largely denied Arvest's motion to dismiss, indicating that it resolved many of the issues in this case, that is not ultimately a guarantee of success on the merits. Arvest could appeal any order granting class certification or any judgment rendered for Plaintiff Lembeck.

There is no Ninth Circuit or California Supreme Court precedent finding that Pay-to-Pay Fees are illegal under either the federal FDCPA or the Rosenthal Act, respectively, and while this Court found in favor of Plaintiff Lembeck at the motion to dismiss stage, other California courts have agreed with Arvest's position, even after this Court rejected Arvest's motion. *See Lish v. Amerihome Mortg. Co.*, No. 220-CV_07147JFWJPRX, 2020 WL 6688597, at *4 (C.D. Cal. Nov. 10, 2020) (finding no Rosenthal Act violation where "Defendant simply offered Plaintiff the option to pay by telephone for a fee and Plaintiff opted to take advantage of the optional convenience and incur the charge for doing so."); *Flores v. Collection Consultants of Cal.*, No. SA CV 14-0771-DOC (RNBx), 2015 WL 4254032, at *10 (C.D. Cal. Mar. 20, 2015) (finding a convenience fee charge was not "incidental to the principal obligation" because a consumer must "choose to affirmatively and separately opt in to" the alternative payment method). Plaintiff Lembeck would need to continue to persuade the Court that the Rosenthal Act applies to mortgage servicers regardless of whether they are considered debt collectors under the federal FDCPA. *See, e.g., Oya v. Wells Fargo Bank, N.A.*, No. 3:18-cv-01999, 2019 WL 3239021, at *4-6 (S.D. Cal. July 17, 2019) (dismissing Rosenthal Act claim based on 15 U.S.C. § 1692f because defendant was not a "debt collector" under the Rosenthal Act); *Kemp v. Wells Fargo Bank, N.A.*, No. 17-cv-01259-MEJ, 2017 WL 4805567, at *8-11 (N.D. Cal. Oct. 15, 2017) (same). While Plaintiffs Lange and Miller can each cite numerous cases finding that Pay-to-Pay Fees are "incidental" to the mortgage agreement within the meaning of 15 U.S.C. § 1692f, and thus violate the FDCPA if they are not expressly authorized by the mortgage agreements, Arvest can cite many cases supporting its position that they are not. *See, e.g., Cooper v. PennyMac Loan Servs., LLC*, --- F. Supp. 3d ---, 2020 WL 8073604, at *6 (S.D. Fla. Dec. 23, 2020) ("Even if Plaintiff could allege that Defendant was collecting a debt by charging and receiving a processing fee, Plaintiff failed to allege that Defendant had no legal right to do so."); *Turner v. PHH Mortg. Corp.*, 467 F. Supp. 3d 1244, 1248 (M.D. Fla. 2020) (finding defendant was not a debt collector and convenience fees did not violate Florida or federal debt collection law); *Lang v. Ocwen Loan Servicing, LLC*, No. 3:20-cv-81-J-20MCR, 2020 WL 5104522, at *2-3 (M.D. Fla. July 17, 2020) (same); *Bardak v. Ocwen Loan Servicing*, No. 19-1111, 2020 WL 5104523, at *4 (M.D. Fla. Aug. 12, 2020) (same). *See also Barzelis v. Flagstar Bank*, No. 4:12-CV-611-Y, 2016 WL 6371290, at *8 n.7 (N.D. Tex. Sept. 26, 2016) (dismissing claim under Texas debt collection law because the deed of trust did not

prohibit challenged fees); *Duffee v. Collecto, Inc.*, No. 3-12-CV-0187-B, 2012 WL 652228, at *1-2 (N.D. Tex. Feb. 8, 2012), *report and recommendation adopted*, 2012 WL 666150 (N.D. Tex. Feb. 28, 2012) (finding $15 fee for phone payment did not violate the FDCPA because debtor was not required to make phone payments and the fee was disclosed before it was charged).

Arvest could also persuade the court in either case that the Pay-to-Pay Fees were made subject to a separate agreement, an argument that did not persuade this Court but has gotten traction elsewhere. *See, e.g.*, *Bardak*, 2020 WL 5104523, at *4 (finding Pay-to-Pay Fees permissible where they were paid "in return for the use of entirely optional, expedited only and telephonic payment methods"); *Alexander v. Carrington Mortg. Servs., LLC*, No. RDB-20-2369, 2020 WL 7319252, at *5 (D. Md. Dec. 11, 2020) (finding that the convenience fee "was the subject of and governed by clickwrap agreements to which [p]laintiffs agreed well after their mortgage loans were originated" and that plaintiffs were "free to decline this option").

Arvest may also persuade a court to dismiss the breach of contract claims brought by Plaintiffs Lange and Miller. Arvest has argued that it is not a party to Plaintiff Lange's mortgage and would likely argue the same as to Plaintiff Miller. *See Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 243 (5th Cir. 2018) (finding a loan servicer was not liable for breach of contract based on deed of trust). Or, Arvest could persuade the courts that the fees do not violate the mortgage agreements, as other servicers have successfully argued in recent cases. *See Dees v. Nationstar Mortg. LLC*, ---F. Supp. 3d ---, 2020 WL 6749036, at *4-5 (S.D. Tex. 2020) ("Without a contractual prohibition against the assessment of these optional pay-to-pay fees, Plaintiffs do not assert a viable breach of contract claim."); *Caldwell v. Freedom Mortg. Corp.*, No. 3:19-CV-2193-N, 2020 WL 4747497, at *2 (N.D. Tex. Aug. 14, 2020) (finding no breach of contract based on collection of convenience fees). *See also Alvarez v. LoanCare, LLC*, No. 20-2187-CIV-ALTONAGA/Goodman, 2021 WL 184547, at *11 (S.D. Fla. Jan. 19, 2021) ("The mere absence of express authority to charge fees does not mean fees are prohibited."). In short, there are any number of legal arguments that Arvest may successfully make in the *Lange* and *Miller* actions that could result in their claims being substantially narrowed at the motion to dismiss stage, summary judgment, or trial.

Moreover, no class has been certified in any of the underlying cases and there is no guarantee that this Court or any other would certify a class. In fact, the Southern District of Florida recently declined to

certify a class in a case raising claims based on nearly-identical fees under Florida law. *See Alvarez*, 2021 WL 184547, at \*17-18. In *Alvarez*, the court found class certification inappropriate because, according to the court, there was no legal basis for the claims and because certification "would require, inter alia, individualized inquiries into each mortgage's terms . . . and the circumstances of the making of each particular processing fee agreement, whether by phone or online." *Id.* at \*15. The *Alvarez* court's conclusion was incorrect because the uniform terms of the underlying mortgages and the common questions of law satisfy the commonality and predominance requirements; and should these cases advance to the class certification stage, Plaintiffs will present evidence and expert testimony to support their arguments that the underlying mortgages are uniform and no individualized inquiry is necessary, but there is no guarantee that all three courts will agree—or that the Fifth, Ninth, and Eleventh Circuits would agree as well, should Arvest appeal.

Of course, the Parties acknowledge that this Court takes a more favorable view on the merits of the claims than other courts, particularly those in other states. But ultimately, the claims of any one state class are relatively small, and unless states can be bundled together in such a way to ensure economies of scale, each state's class members risk the possibility that in any individual state settlements, notice and administration costs could dwarf the cost of recovery. While the claims of the California class members are the furthest along and the most crystalized, those class members also bear the greatest risk of being the last ones standing. As such, those California Settlement Class members risk a situation in which they would see a settlement diluted by the fact that they would have to shoulder the costs of administration, as well as the attorneys' fees associated with negotiating, seeking approval of, and supervising the settlement.

While litigation presents serious risks at many stages, not to mention substantial expense and delay without any guarantee of additional benefit to the Settlement Class, the Settlement provides immediate and substantial benefits to over 48,000 Settlement Class Members. And these benefits are substantial: 49.7% of damages is significantly higher than the percentage of damages achieved in settlements of other similar

cases, and this is the first such settlement to involve such significant injunctive relief.[5] *See* App'x A. It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). This factor favors preliminary approval.

> **b.      The Risks, Complexity, and Likely Duration of Further Litigation**

*Second*, the risks, expense, complexity, and likely duration of further litigation support preliminary approval of the Settlement. Zavareei Decl. ¶¶ 20-22. This case is settling in its early stages; if the Settlement is not approved, the parties will likely need to litigate through multiple dispositive motions and a motion for class certification. *Id.* ¶ 16.   The litigation would likely take years to resolve and involve expensive expert discovery. *Id.* ¶ 22.   Because the underlying cases would proceed in three separate courts, there would likely be duplication of effort and consumption of the Parties' and the court system's resources and time. The Parties would need to resolve discovery disputes and incur the expense and burden of preparing for trial. Even if Plaintiffs in all three underlying cases succeed at class certification and the merits, any recovery would likely be delayed by appeals. Yet there is no guarantee that lengthy litigation and expensive discovery would lead to greater benefits for the Settlement Class Members. *Id.* Instead, there would be multiple points at which the Class's claims could be narrowed or dismissed. *Id.* ¶ 16. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). Thus, this factor favors preliminary approval.

---

[5] One other settlement in a similar pay-to-pay fee case, negotiated by Bailey & Glasser LLP, included similar injunctive relief as part of a settlement involving a class of 754 borrowers. *See Pierce v. Statebridge*, No. 1:20-CV-117 (M.D.N.C.) & App'x A.

### c.    The Risk of Maintaining Class Action Status

*Third*, the risk of maintaining class action status through trial supports preliminary approval of the Settlement. Zavareei Decl. ¶ 17. The class has not yet been certified, and Arvest will oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). The Southern District of Florida recently denied class certification in a similar pay-to-pay case. *See Alvarez*, 2021 WL 184547, at *17-18. This factor favors preliminary approval.

### d.    The Amount Offered in Settlement

*Fourth*, the amount offered in settlement supports preliminary approval. The Common Fund of $1,474,314 is an excellent recovery for the class, representing approximately 49.7% of the total $2,966,198 Pay-to-Pay fees collected by Arvest from the settlement class. Zavareei Decl. ¶ 23. After Court-approved attorneys' fees, expenses, service awards, and the costs of Notice are deducted, the approximate $872,926 will be distributed to Settlement Class Members.

This settlement is a substantially superior recovery compared to other settlements in similar cases involving Pay-to-Pay Fees, in that it will return a significantly higher percentage of fees to the Settlement Class. *See, e.g.*, Minute Order, *Sanders v. Loancare, LLC*, Case No. 2:18-CV-09376-PA (RAOx) (C.D. Cal.), Dkt. 155 ($3.4 million common fund representing 38.64% of the total pay-to-pay fees collected from class members); Final Order and Judgment, *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-cv-1831 (N.D. Ala.), Dkt. 71 ($9.7 million common fund representing 30% of damages in Pay-to-Pay Fee case); Final Order and Judgment, *Garcia v. Nationstar Mortgage, LLC*, No. 2:15-cv-1808 (W.D. Wash.), Dkt. 122 ($3.875 million common fund representing approximately one third of damages in Pay-to-Pay Fee case)[6]; *Montesi et al. v. Seterus Inc.*, No. 2015CA010910 (Palm Beach County, Fla.) ($1.75 million common fund representing 35% of damages in Pay-to-Pay Fee case); *Silveira v. M&T Bank*, No. 2:19-cv-06958-ODW (C.D. Cal.)

---

[6] *See also* Motion for Final Approval of Class Action Settlement at 12, *Garcia v. Nationstar Mortgage, LLC*, No. 2:15-cv-1808 (W.D. Wash. Oct. 3, 2018)e, Dkt. 109 (explaining that the settlement amount represents approximately one-third of damages).

(proposed settlement of $3.25 million common fund representing 35% of damages). *See also* App'x A (chart documenting similar settlements). Because the settlement amount here is greater than other settlements reached and approved in similar cases, this factor reflects that the Settlement is fair. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). In light of the difficulties and expenses Class Members would face to pursue individual claims, and the likelihood that they might be unaware of their claims, this Settlement Amount is appropriate. *See id.*

The Settlement is also significant in that Class Counsel obtained valuable injunctive relief in the form of Arvest's agreement to cease charging Pay-to-Pay Fees for three years. The injunctive relief is estimated to deliver approximately $2.5 million in additional benefits to the Settlement Class, assuming a comparable rate of telephone payments going forward. This is a benefit that *no* similar settlement has yet achieved. Thus, not only will the Settlement return 49.7% of damages to Settlement Class Members, but it will also save them the burden of paying Pay-to-Pay Fees in the future.

### e.     The Allocation of the Settlement

**Fifth,** the allocation of the Settlement is fair and reasonable, and the manner of administrating relief will be effective. Payments will be made on a *pro rata* basis depending on the number of Pay-to-Pay Fees each Settlement Class Member paid. SA § IV.B. According to this allocation, Class Members are treated fairly as to one another because they are compensated according to the amount of Pay-to-Pay Fees they were charged. *See* Fed. R. Civ. P. 23(e)(2)(D). This method is consistent with the distribution of common funds in other fee cases. *See, e.g., Lloyd v. Navy Federal Credit Union*, No. 17-cv-1280-BAS-RBB, 2018 WL 2269958, at *3 (S.D. Cal. May 28, 2019) (approving settlement from which class members would receive *pro rata* distribution of common fund based on number of fees paid); *Walters v. Target Corp.*, No. 3:16-cv-1678-L-MDD, 2019 W 6696192, at * (S.D. Cal. Dec. 6, 2019) (same). A *pro rata* distribution means that Settlement Class Members who paid more Pay-to-Pay Fees will receive a relatively larger share of the Net Settlement Fund, and those who paid fewer will receive less. This allocation treats Settlement Class Members equitably.

While it is true that the California Settlement Class Members, if successful, could obtain statutory

---

damages not available to the Texas and Florida Settlement Class Members, that does not mean that the Settlement treats the California Settlement Class Members unfairly by allotting them the same *pro rata* shares as the other Settlement Class Members. The Rosenthal Act caps statutory damages at either $500,000 or 1% of the debt collector's net worth. Any distribution of statutory damages to Settlement Class Members in California would be minimal. This Settlement—which is significantly higher than other similar settlements, *see* App'x A, and includes Arvest's commitment to cease charging the fees altogether—did not leave a material amount of statutory damages award on the table in a way that harms the California members of the Settlement Class.

The proposed method of distributing relief is also effective. *See* FED. R. CIV. P. 23(e)(2)(C)(ii). The Parties have agreed upon an experienced Settlement Administrator to administer the settlement. *See generally* Zavareei Decl. ¶ 35. Class Members are not required to fill out an unwieldy claim form or even submit claims at all. Settlement Class Members will have the option to choose to receive their payments digitally, and for those who do not so choose, the Settlement Administrator will mail checks to the Settlement Class Members, after running their addresses through the National Change of Address database. Settlement Class Members may also choose to receive their payments digitally, which will increase convenience to them.

### f.     The Extent of Discovery Completed and Stage of Proceedings

*Sixth* the extent of discovery completed and the stage of proceedings favor preliminary approval. The fact that this case is in its early stages means that neither side has spent significant sums on the litigation. However, prior to filing, Class Counsel engaged in substantial investigation of Arvest's Pay-to-Pay Fees and reviewed and analyzed informal discovery from Arvest. Class Counsel have litigated many similar cases based on Pay-to-Pay Fees, and knew what information and data would be critical for resolving the Settlement Class's claims. Thus, Class Counsel obtained through informal discovery information and data similar to what they would have received through the discovery process, while allowing the parties to focus on the most relevant discovery. Zavareei Decl. ¶¶ 7-9. Plaintiffs have conducted sufficient investigation and discovery to permit Class Counsel and the Court to intelligently and fairly evaluate the fairness and adequacy of the Settlement. Thus, "the efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting preliminary approval." *Hillman v. Lexicon Consulting,*

*Inc.*, No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. Apr. 27, 2017).

### g.    The Views of Class Counsel

*Seventh*, Class Counsel's view is that this Settlement is an outstanding recovery for the Settlement Class. Zavareei Decl. ¶ 24. Class Counsel is experienced in class action litigation, including cases concerning Pay-to-Pay Fees. *Id.* ¶¶ 27, 32. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g.*, *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports preliminary approval.

### h.    Government Participant and Class Member Reaction

*Last* there is no government participant and, because the Court has not yet approved the Class Notice, the Settlement Class has not had an opportunity to react, so these factors are neutral. *See Hillman*, 2017 WL 10433869, at *8.

### 3.    The Class Representatives and Class Counsel have adequately represented the proposed class.

Under Rule 23(e)(2)(A), the Court should also consider whether the class representatives and Class Counsel have adequately represented the class, including the nature and amount of discovery undertaken in the litigation. *See Avina*, 2019 WL 8163642, at *6. Here, Valerie Lembeck, Andrew Miller, and Robert Lange assisted Class Counsel by providing documents, reviewing the pleadings, and reviewing the Settlement Agreement. *See* Zavareei Decl. ¶ 26. The class representatives do not have any conflicts with the proposed class and have adequately represented them in the litigation. *Id.* ¶ 25.

Class Counsel has also adequately represented the class. Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. *Id.* ¶ 27. And, Class Counsel is currently litigating over ten other proposed class actions against mortgage servicers like Arvest involving Pay-to-Pay Fees. *Id.* ¶ 32. In negotiating the Settlement Agreement, Class Counsel had the benefit of years of experience and familiarity with the factual and legal bases for this case, as well as other cases involving servicers, financial institutions, and fees. *Id.* ¶ 31. This understanding of the intricacies of the consumer finance and mortgage servicing space provided Class Counsel with the tools and perspective to achieve an outstanding recovery for the Settlement Class—and prepared them to fight this Action to a successful conclusion if necessary. *Id.* ¶ 8.

Before filing the Complaint, Class Counsel spent many hours investigating potential claims against Arvest. *Id.* ¶ 3. Class Counsel interviewed potential plaintiffs and gathered information about Arvest's conduct and its impact on consumers. *Id.* This information was essential to Class Counsel's ability to evaluate the risks of this litigation and the benefits to the Settlement Class. Class Counsel also expended significant resources researching and developing the legal claims at issue. *Id.* After Plaintiffs' lawsuits were filed, Class Counsel briefed and defeated Arvest's motion to dismiss the *Lembeck* action, briefed Arvest's motion to dismiss the *Lange* action, briefed and won a motion to remand the *Miller* case, and briefed a motion to dismiss that action as well. Plaintiff Lembeck also served written discovery upon Arvest. Class Counsel's representation of Plaintiffs and the Settlement Class has been adequate.

### 4.     The proposed Fee and Expense Award is fair and reasonable.

Finally, the terms of the proposed award of attorneys' fees are also fair. *See* FED. R. CIV. P. 23(e)(2)(c)(iii). Class Counsel will file a separate motion seeking approval of Attorneys' Fees and Expenses in an amount not to exceed one third (33.33%) of the Gross Settlement Fund, plus their reasonable expenses of litigation. While the proposed Fee and Expense Award exceeds the 25% benchmark generally used to evaluate attorneys' fee awards in common fund cases, here, the requested award is only 12.4% of the total value of the Settlement once the injunctive relief is considered (approximately $3,974,314). This percentage is well within the range of reasonableness. *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) (upward departure from 25% acceptable); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *9 (C.D. Cal. June 10, 2005) (approving attorneys' fees of one-third of the settlement fund).

Class Counsel will also seek Service Awards for Valerie Lembeck, Andrew Miller, and Robert Lange, and the amounts that they intend to seek are also reasonable and fair. The Settlement Agreement authorizes the Class Representatives to seek a service award of up to $5,000 each. SA §IV.D. These amounts are well within the range of approval for class action settlements that provide significant benefits to the class. *See, e.g., Bravo v. Gale Triangle, Inc.*, No. CV 16-03347 BRO (GJSx), 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) ("Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable." (citing *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)); *Hickcox-Huffman v. U.S. Airways, Inc.*, No. 10-cv-05193, 2019 WL 1571877, at *2 (N.D. Cal. April 11, 2019)

(approving service award of $10,000); *Noroma v. Home Point Fin. Corp.*, No. 17-cv-07205, 2019 WL 1589980, at *4 (N.D. Cal. April 12, 2019) (approving service award of $10,000).

**B.    Certification of the Settlement Class is appropriate.**

On a motion for preliminary approval, the parties must also show that the Court "will likely be able to … certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1). The Settlement Class meets all of the requirements of FED. R. CIV. P. 23(a) and (b)(3).

**1.    The Settlement Class Meets the Requirements of Rule 23(a)**

The Settlement Class as defined meets Rule 23(a)'s numerosity requirement. The class definition encompasses more than 48,000 Class Members. This number of Class Members demonstrates that joinder is a logistical impossibility. *See, e.g. Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is generally satisfied when a class has at least 40 members); *see also Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010) (same).

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). There are several common questions in this case, including: whether Arvest breached its contracts with borrowers by charging Pay-to-Pay Fees not authorized by their mortgage agreements; whether Arvest violated state law by charging Pay-to-Pay Fees; and whether Plaintiffs and the Classes were damaged by Arvest's conduct. Commonality requires a plaintiff "to demonstrate that their claims 'depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Gonzalez-Tzita v. City of L.A.*, No. CV 16-0194 FMO(Ex), 2019 WL 7790440, at *5 (C.D. Cal. Dec. 9, 2019) (citing *Dukes*, 564 U.S. at 350); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). Plaintiffs' claims here depend on the common contentions that Pay-to-Pay Fees are neither authorized by class members' mortgages or permitted by law.

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). To satisfy typicality, a claim or defense is not required to

be identical, but rather "reasonably coextensive" with those of the absent class members. *Felix v. WM. Bolthouse Farms, Inc.*, No.: 1:19-cv-00312-AWI-JLT, 2020 WL 2175352, at *5 (E.D. Cal. May 4, 2020) (quoting *Hanlon*, 150 F.3d at 1020). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 537 (N.D. Cal. 2015) (typicality was met where the named plaintiffs, like class members, were all charged for marked-up broker price opinions by mortgage company). Here, Plaintiffs' claims are typical of the claims of Settlement Class Members because they arise from the same course of alleged conduct: charging borrowers a fee to make payments that is not authorized by borrowers' mortgages or permitted by law. And, there is one Plaintiff from each state included in the Settlement Class.

Finally, the adequacy requirement is satisfied when the class representatives will "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). To make this determination, "courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (citing *Hanlon*, 150 F.3d at 1020); *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 325 (C.D. Cal. 2015).

Here, the Plaintiffs have no conflicts of interest with other class members, and they and their counsel will and have vigorously prosecute this case on behalf of the class. *See* Zavareei Decl. ¶ 25; *see supra* Part V.A.1.

### 2.    The Settlement Class satisfies the requirements of Rule 23(b)(3).

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and … a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

Common questions predominate over any questions affecting only individual members here. The questions common to all Settlement Class members include whether Arvest can charge Pay-to-Pay Fees if

the fees are not expressly authorized by the mortgage, not permitted by law, and exceed the bank's actual costs. These questions can be resolved using the same evidence for all class members and is exactly the kind of predominant common issue that makes class certification appropriate. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . . ." (citation and quotation marks omitted)). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Longest*, 308 F.R.D. at 326-28 (finding predominance met in class action alleging breach of contract and UCL violations against mortgage servicer for charging inflated charges and alleged kickbacks for forced place insurance because claims could be proven through common evidence of defendants' uniform policies).

Class certification here is also "superior to other available methods for fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). Classwide resolution is the only practical method of addressing the alleged violations at issue in this case. There are thousands of class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.").

C. **The Court should approve the proposed notice plan.**

1. **The proposed notice plan is adequate and warrants preliminary approval.**

The parties' proposed notice plan is formulated to conform with the procedural and substantive requirements of Rule 23. Due process under Rule 23 requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* FED. R. CIV. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175-76 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort."). The mechanics of the notice process are left to the discretion of the Court, subject only to the broad "reasonableness" standards imposed by due process. *See Tapia v. Zale Del. Inc.*, No.

13cv1565-PCL, 2017 WL 1399987, at *4 (S.D. Cal. Apr. 18, 2017); *see also Rosenburg v. I.B.M.*, No. CV06–00430PJH, 2007 WL 128232, *5 (N.D. Cal. Jan. 11, 2007) (stating that notice should inform class members of essential terms of settlement including claims procedure and their rights to accept, object or opt-out of settlement).

The Class Notice is comprised of direct notice in the form of Email Notice and Postcard Notice. In addition, the Settlement Administrator will establish the Settlement Website, where the Long Form Notice will be available, along with important case documents. And a toll-free telephone number will be available to Settlement Class Members with questions. The operative notice plan is the best notice practicable and is reasonably designed to reach the Settlement Class Members. *See* Zavareei Decl. ¶ 38. The Ninth Circuit has approved class notice in the form of email and postcard notice. *See, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (finding notice satisfied due process and Rule 23(e) where an initial email notice was supplemented by a postcard notice to those whose emails bounced back). Here, contact information will initially be provided from Arvest, which, as a mortgage servicer regularly issuing bills to class members, is highly likely to have the most accurate contact information. When combined with a process to confirm addresses through NCOA before sending notice and subsequent skip tracing in the unlikely instance that any notice is returned as undeliverable, the notice program should cause nearly every class member to receive actual notice.

Moreover, the substance of the notice will fully apprise class members of their rights. Under Rule 23(e), notice to class members "must 'generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Lane v. Facebook, Inc.,* 696 F. 3d 811, 826 (9th Cir. 2012) (quoting *Rodriguez v. W. Publ'g Corp.,* 563 F. 3d 948, 962 (9th Cir. 2009)) (alteration in original). The Notice contains all the critical information required to apprise Class Members of their rights under the settlement, directs them to the settlement website, where they can obtain more detailed information, and provides a toll-free number for Class Members to call with questions. This approach to notice is adequate. *See e.g. Sarabri v. Weltman, Weinberg & Reis Co., L.P.A,* No. 10cv1777 AJB (NLS), 2012 WL 3809123, at *2 (S.D. Cal. Sept. 4, 2012) (approving mailed notice where notice would include the settlement website with full settlement details and the claim administrator's toll free number);

1    *Knutson v. Schwan's Home Serv., Inc.,* No. 3:12-cv-00964-GPC-DHB, 2014 WL 3519064, at *5 (S.D. Cal. 2014)

2    (same). This information undoubtedly provides "sufficient detail" to allow class members with adverse

3    viewpoints to conduct further investigation and "come forward to be heard." *Lane,* 696 F.3d at 826

4    (holding the sufficient detail standard "does not require detailed analysis of the statutes or causes of action

5    forming the basis for the plaintiff class's claims"). Accordingly, this notice program will fully apprise Class

6    Members of their rights under Rule 23(e) and should be approved.

7    **VI.    CONCLUSION**

8            For the foregoing reasons, Plaintiffs Valerie Lembeck, Andrew Miller, and Robert Lange request

9    that the Court preliminarily approve the Settlement, enter the Preliminary Approval Order, appoint them as

10   Class Representatives, appoint Tycko & Zavareei LLP and Bailey & Glasser LLP as Class Counsel, direct

11   that Notice be distributed to the Settlement Class, and schedule a Fairness Hearing.

12

13   Dated: February 26, 2021                     Respectfully submitted,

14

15   */s/ Hassan A. Zavareei*

16   Hassan A. Zavareei (SBN 181547)             Todd Walburg (SBN 213063)
     Kristen G. Simplicio (SBN 263291)           BAILEY & GLASSER LLP

17   TYCKO & ZAVAREEI LLP                         1999 Harrison St., Suite 660
     1828 L Street NW, Suite 1000                Oakland, CA 94612

18   Washington, D.C. 20036                       Telephone: (510) 207-8633
     Telephone: 202-973-0900                      Facsimile: (510) 463-0291

19   Facsimile: 202-973-0950                      twalburg@baileyglasser.com
     hzavareei@tzlegal.com

20   ksimplicio@tzlegal.com                       James L. Kauffman
                                                  BAILEY & GLASSER LLP

21   V Chai Oliver Prentice                       1055 Thomas Jefferson Street, NW
     TYCKO & ZAVAREEI LLP                         Washington, D.C. 20007

22   1970 Broadway, Suite 1070                    Telephone: (202) 463-2101
     Oakland, CA 94612                            Facsimile: (202) 463-2103

23   Telephone: (510) 254-6808                    jkauffman@baileyglasser.com
     Facsimile: (202) 973-0950

24   vprentice@tzlegal.com                        *Attorneys for Plaintiff*

25

26

27