Hassan A. Zavareei (SBN 181547)
Kristen G. Simplicio (SBN 263291)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: 202-973-0900
Facsimile: 202-973-0950
hzavareei@tzlegal.com
ksimplicio@tzlegal.com

BAILEY & GLASSER, LLP
1999 Harrison St., Suite 660
Oakland, CA 94612
Telephone: 510-207-8633
Facsimile: 510-463-0291
twalburg@baileyglasser.com

[Additional counsel in signature block]

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **VALERIE LEMBECK, ROBERT LANGE, and ANDREW MILLER**, *on behalf of themselves and all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>**ARVEST CENTRAL MORTGAGE CO.,**<br><br>Defendant. | Case No. 3:20-cv-03277-VC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: August 12, 2021<br>Time: 2:00 p.m.<br>Courtroom:<br>Judge: Vince Chhabria<br><br>Date Filed: May 14, 2020<br>Trial Date: None set |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT .............. v

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

    I.      INTRODUCTION ............................................................................................. 1

    II.     LITIGATION AND SETTLEMENT HISTORY .......................................... 2

    III.    SUMMARY OF THE SETTLEMENT BENEFITS ....................................... 4

    IV.    CLASS NOTICE WAS PROVIDED AS DIRECTED BY THE COURT. ................... 4

    V.     THE LEGAL STANDARD FOR FINAL APPROVAL .................................. 5

    VI.    THE AGREEMENT IS FAIR AND REASONABLE. ...................................... 6

         A.     A presumption of fairness applies to the Settlement. ............................. 6

            1.     The Settlement was negotiated at arm's length. ........................ 7

            2.     The Settlement followed extensive investigation and discovery. ............. 7

            3.     Experienced Class Counsel negotiated the Settlement. ............................ 7

         B.     The Settlement is Adequate Under *Briseno*. ................................................ 8

         C.     Additional criteria favor approval of the Settlement. .............................. 8

            1.     The Settlement provides substantial relief to the Class. .......................... 8

            2.     The Settlement eliminates the risk of no recovery. ................................... 9

            3.     The Settlement compares favorably to potential relief. .......................... 10

            4.     The Settlement enjoys overwhelming class support ................................. 11

         D.     Any *Cy Pres* Award Will Benefit the Class. ............................................. 12

    VII.   THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES .......... 13

    VIII.  CONCLUSION .............................................................................................. 13

# TABLE OF AUTHORITIES

**CASES**

*Adams v. Inter-Con Sec. Sys. Inc.*,
  No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)......................................................... 7

*Andrew Miller v. Arvest Central Mortgage Co.*,
  No. 20-010342-CA-01 (Fla. Cir. Ct., Miami-Dade Cty.) ........................................................................ 2

*Briseno v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) .................................................................................................1, 6, 8

*Churchill Vill., L.L.C. v. General Electric*,
  361 F.3d 566, 577 (9th Cir. 2004) ......................................................................................... 11

*Custom LED, LLC v. eBay, Inc.*,
  No. 12-cv-00350-JST, 2014 WL 2916871, (N.D. Cal. June 24, 2014) ............................... 10

*De Leon v. Ricoh USA, Inc.*,
  No. 18-cv-03725-JSC, 2020 U.S. Dist. LEXIS 56285, (N.D. Cal. Mar. 31, 2020) ............... 12

*Flores v. Collection Consultants of Cal.*,
  No. SA CV 14-0771-DOC (RNBx), 2015 WL 4254032, (C.D. Cal. Mar. 20, 2015) ........... 10

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011, 1026 (9th Cir. 1998)................................................................................5, 6, 8, 12

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299, 318 (N.D. Cal. 2018) ...............................................................................9, 11

*In re Bluetooth Headset Products Liability Litigation*,
  654 F.3d 935 (9th Cir. 2011) ...............................................................................................6, 8

*In re Hyundai and Kia Fuel Economy Litig.*,
  926 F.3d 539, 556 (9th Cir. 2019) ............................................................................................ 5

*In re: Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454, 459 (9th Cir. 2000) ......................................................................................... 12

*Lane v. Facebook, Inc.*,
  696 F.3d 811, 819 (9th Cir. 2012) ....................................................................................8, 12

*Lish v. Amerihome Mortg. Co.*,
  No. 220-CV_07147JFWJPRX, 2020 WL 6688597, (C.D. Cal. Nov. 10, 2020)................... 9

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423, 436 (2d Cir. 2007) ......................................................................................... 12

*Nachsin v. AOL, LLC*,
  663 F.3d 1034, 1038 (9th Cir. 2011)..................................................................................... 12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523, 528 (C.D. Cal. 2004) .............................................................................6, 9, 10

*Officers for Justice v. Civ. Serv. Comm'n of City and County of San Francisco*,
  688 F.2d 615, 625 (9th Cir. 1982) ....................................................................................6, 10

*Perkins v. Linkedin Corp.*,
  No. 5:13-cv-04303-LHK, 2016 U.S. Dist. LEXIS 18649, (N.D. Cal. Feb. 16, 2016).......................... 12

iii

*Robert Lange v. Arvest Central Mortgage Co.*,
  No. 4:20-cv-293-LPR (E.D. Ark.) .................................................................................. 2

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948, 965 (9th Cir. 2009) .................................................................................. 6

*Sanders v. LoanCare, LLC*,
  2:18-cv-09376-SJO (RAOx0)(C.D.Cal.) ....................................................................... 11

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301, 1305 (9th Cir. 1990) ............................................................................ 12

*Staton v. Boeing Co.*,
  327 F.3d 938, 975 (9th Cir. 2003) .................................................................................. 4

*Stewart v. Applied Materials, Inc.*,
  No. 15-cv-02632-JST, 2017 WL 3670711, (N.D. Cal. Aug. 25, 2017) ............................ 7

*Thomas-Lawson v. Carrington Mortg. Servs., LLC*,
  No. 220CV07301ODWEX, 2021 WL 1253578 (C.D. Cal. Apr. 5, 2021) ............................ 9

**STATUTES**

15 U.S.C. 1692f(1) ............................................................................................................ 3

**RULES**

FED. R. CIV. P. 23(E)(2)(C)(III) ........................................................................................... 6

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:20-cv-03277-VC

### **NOTICE OF MOTION AND MOTION**
### **FOR FINAL APPROVAL OF SETTLEMENT**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on August 12, 2021 at 2:00 p.m., or as soon thereafter as the matter may be heard by the Honorable Judge Vince Chhabria of the United States District Court for the Northern District of California, San Francisco Division, Plaintiffs Valerie Lembeck, Robert Lange, and Andrew Miller, by and through their undersigned counsel of record, will and hereby do move the Court for an order granting final approval of the parties' proposed Settlement Agreement and Release and exhibits thereto, dated February 26, 2021, as amended on March 23, 2021.[1]

This Motion is based on Federal Rule of Civil Procedure 23, this Notice of Motion, the supporting Memorandum of Points and Authorities, the Settlement Agreement, the accompanying declarations of Hassan A. Zavareei ("Zavareei Decl."), James Kauffman ("Kauffman Decl."), and Andrew Perry ("Perry Decl."), the pleadings and papers on file in this action, and any additional information or argument as the Court may consider.

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Settlement Agreement.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:20-cv-03277-VC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

The proposed Settlement Agreement and Release ("Agreement") establishes a $1,474,314 Common Fund that will provide cash payments to class members, and cover administration costs, reasonable attorney's fees and expenses, and service awards. Feb. 26, 2021 Declaration of Hassan Zavareei, ECF No. 62-2 ("Zavareei Decl."), Ex. 1, Agreement ¶ IV.A. Not only will the Settlement provide significant direct monetary compensation, it will also provide valuable injunctive relief to class members. Critically, the injunctive relief stops Defendant Arvest Central Mortgage Co. ("Defendant") from collecting Pay-to-Pay fees in the three Class Members' states of California, Texas, and Florida for three years. After a robust direct notice campaign, there were no opt-outs and no objections, demonstrating the fairness of the Settlement as a whole.

Notably, the settlement as a whole avoids any of the pitfalls flagged by the Ninth Circuit in *Briseno v. Henderson*, 998 F.3d 1014 (9th Cir. 2021). Here, the parties did not discuss any award of attorneys' fees during their arms-length negotiations with a mediator, and there is no clear sailing provision that prevents Defendant from challenging the fee award. Indeed, the fee award still leaves a settlement fund that provides adequate compensation of the class, maximizes redemption by automatically paying class members instead of requiring them to submit claims, provides for valuable changed practices, and provides that no portion of the settlement fund will revert to Defendant. This Settlement is a superb result for the class, considering the hotly contested legal theories that made continued litigation risky, with the chance of no recovery at all.

On March 23, 2021, the Court preliminarily approved the Settlement after finding that the Agreement "was negotiated at arms' length" and was "fair, reasonable, and adequate." Since then, the Parties have complied with the Agreement and the Court's Preliminary Approval Order and provided notice to the class. The response rate confirms that the Class Notice effectively provided the best notice practicable as required by due process. Indeed, there were 1,740 unique visitors to the settlement website, and 197 calls and 21 emails to the administrator. Perry Decl., ¶ 10-12.

The response to the Settlement has been completely favorable. Out of 48,058 Class Members, none have opted out of the Settlement as of the July 6, 2021 deadline. Perry Decl., ¶ 9. There were also

no objections to the Settlement. *Id.* ¶ 13.

For all of these reasons and the reasons set forth below, Plaintiffs submit that the Settlement is fair, adequate, and reasonable, and should be finally approved. Therefore, Plaintiff respectfully requests that this court: (1) grant this Motion, (2) finally approve the proposed Settlement, (3) affirm the certification of the Settlement Class for settlement purposes only, (4) affirm the appointment of Valerie Lembeck, Andrew Miller, and Robert Lange as Class Representatives, (5) affirm the appointment Hassan A. Zavareei and Kristen G. Simplicio of Tycko & Zavareei LLP and James L. Kauffman of Bailey Glasser LLP as Class Counsel, (6) retain jurisdiction over this matter to resolve issues related to interpretation, administration, implementation, effectuation, and enforcement of the Settlement, and (7) enter Final Judgment dismissing this action. [2]

## II.    LITIGATION AND SETTLEMENT HISTORY

Plaintiffs Valerie Lembeck, Andrew Miller, and Robert Lange commenced separate actions in California, Florida, and Texas, respectively to challenge Arvest Central Mortgage Company ("Arvest")'s practice of charging and collecting illegal processing fees from borrowers paying their monthly mortgage by phone or online. Plaintiff Lembeck initiated a class action lawsuit in this Court, alleging that Arvest violated California's Rosenthal Fair Debt Collections Act ("Rosenthal Act") and Unfair Competition Law ("UCL"). *See* Compl., Dkt. 1. Plaintiff Miller initiated a class action in state court in Florida against Arvest, alleging violations of the Florida Consumer Collection Practices Act ("FCCPA") and the Florida Deceptive Unfair Trade Practices Act ("FDUTPA"). *Andrew Miller v. Arvest Central Mortgage Co.*, No. 20-010342-CA-01 (Fla. Cir. Ct., Miami-Dade Cty.). And Plaintiff Lange initiated a class action in the Eastern District of Arkansas against Arvest, alleging violations of the Texas Debt Collection Act ("TDCA"). *Robert Lange v. Arvest Central Mortgage Co.*, No. 4:20-cv-293-LPR (E.D. Ark.). Each Plaintiff also brought breach of contract claims. Although the three putative class actions were brought separately, each is based on one central harm: Arvest charged and collected millions of dollars in $5 and $10 Pay-to-Pay Fees from homeowners while processing their regular mortgage payments in

---

[2] As set forth in Plaintiffs' June 15, 2021 motion for attorneys' fees, costs, and service awards, ECF No. 70, in connection with this settlement, Plaintiffs request an award of $491,388 in attorneys' fees and costs and $5,000 each in service awards.

violation of state law. The Rosenthal Act, the FCCPA, and the TDCA are all modeled on the federal Fair Debt Collection Protections Act ("FDCPA"), which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. 1692f(1). Plaintiffs alleged that these fees violated California, Florida, and Texas state law because the fees were not expressly authorized by their mortgage agreements or any statute.

In the *Lembeck* matter, Arvest moved to dismiss the Complaint, Plaintiff Lembeck opposed, and the Court held a hearing on October 22, 2020. *See* Dkts. 24, 39, 45-46. On November 3, 2020, the Court issued an order granting in part and denying in part the motion, permitting all but one of Plaintiff Lembeck's claims to proceed. *See* Dkt. 47. The parties then commenced discovery and Plaintiff Lembeck served written discovery requests and a notice of deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). Zavareei Decl. ¶ 4. In the *Lange* matter, Arvest moved to dismiss the Complaint and Plaintiff Lange opposed. See Lange Dkts. 13, 16, 19. The *Lange* court has not ruled, and that case has been stayed pending approval of the Settlement. See *Lange* Dkt. 35. In the *Miller* matter, Arvest removed the case to federal court and moved to dismiss. Plaintiff Miller moved to remand and opposed the motion to dismiss. The *Miller* court remanded the case to state court on December 18, 2020. The parties have notified the *Miller* court of the Settlement and requested that the court stay proceedings pending approval of the Settlement. To preserve the resources of the Parties and the Court, the Parties agreed that Plaintiffs' claims should be consolidated and a single Settlement Agreement considered and approved by one Court, rather than proceeding piecemeal. Thus, the Plaintiffs filed the current operative Amended Complaint consolidating their claims before this Court. Dkt. 60.

While the Parties litigated these cases, they also began to discuss the possibility of settlement beginning in the summer of 2020. After this Court ordered the Parties to complete a private mediation by January 31, 2021, the Parties continued those preliminary discussions and conferred regarding private mediation. The Parties participated in a full day of hard-fought negotiations before Jed D. Melnick of JAMS on January 22, 2021. The all-day mediation conducted by Mr. Melnick resulted in the Parties agreeing upon the material terms of the Settlement, including the amount of the Common Fund and the injunctive relief. Supervised by Mr. Melnick, the Parties continued to negotiate the details over the

following week. And the Parties further continued to negotiate the written terms of the Agreement over the next several weeks. Notably, there was no discussion of any attorney's fees or reimbursement of litigation costs and no "clear sailing provision" in any of the terms negotiated by the parties.

Following weeks of effort between the Parties, the Agreement was fully and finally executed on February 26, 2021. Plaintiff then filed a Motion for Preliminary Approval of the Class Settlement. Dkt. 62. On March 23, 2021, the Court granted preliminary approval of the Settlement. Dkt. 68.

## III.   SUMMARY OF THE SETTLEMENT BENEFITS

The proposed Agreement establishes a $1,474,314 Common Fund to benefit the class. The Common fund shall be used to make Settlement Payments, and to pay any Fee and Expense Award, any Service Awards, and all Administrative Costs. Agreement ¶ II.S. [3] The Common Fund represents 49.7% of the total $2,966,198 Pay-to-Pay Fees collected by Arvest from the class during the class period. After payment of costs of administration and notice and any fees, expenses, and service award authorized by the Court, Settlement Class members are entitled to receive monetary benefits from the Net Settlement Fund on a pro rata basis, based upon the amount of Pay-to-Pay Fees paid by each Settlement Class Member during the Class Period. Agreement ¶ IV.B. [4]

The Settlement provides invaluable and critical injunctive relief as well. As of January 1, 2021, Arvest has ceased charging or collecting Pay-to-Pay Fees to any Settlement Class Member and to any borrower in California, Florida, and Texas. As a result of this Settlement, Arvest agrees to refrain from the charging or collection of Pay-to-Pay Fees from borrowers in California, Florida, and Texas for a period of at least three years after entry of the Final Approval Order. Agreement ¶ IV.C. Thus, the monetary benefits from the Settlement far exceed the $1.47 million Common Fund.

## IV.   CLASS NOTICE WAS PROVIDED AS DIRECTED BY THE COURT.

After preliminary approval, the Parties provided Notice of the Settlement in conformance with

---

[3] As described in detail in the Agreement, residual funds may be redistributed to eligible class members on a pro rata basis, if there are sufficient funds remaining. Otherwise, they will be distributed as cy pres awards, subject to the Court's approval. See Agreement ¶ IV.B

[4] The cost of notice administration, which protects class members' rights, as well as attorney's fees and costs spent bringing the action, are also benefits to the class. *See, e.g., Staton v. Boeing Co.,* 327 F.3d 938, 975 (9th Cir. 2003). Accordingly, the whole Settlement Amount, as opposed to just the net amount, benefits the Settlement Class.

1    this Court's Preliminary Approval and Provisional Class Certification Order. On April 5, 2021, Arvest

2    provided KCC Class Action Services, LLC ("KCC") with the Settlement Class Member List containing

3    names and contact information including last known address, last known email address, and the dates

4    and amounts of each Pay-to-Pay Fee paid during the Class Period for all persons who fall within the

5    definition of the Settlement Class. Perry Decl. ¶ 2.

6        Then, beginning on May 5, 2021 KCC provided the Court approved Notice Plan to the Class as

7    follows: (1) directed Email Notice to be sent to all Settlement Class Members for whom the Settlement

8    Class Member List included an email address; and (2) directed Postcard Notice to all Settlement Class

9    members for whom no email address appeared in the Settlement Class Member List and to all

10   Settlement Class members whose Email Notices are returned undeliverable. Perry Decl. ¶¶ 4-5.

11   Postcard Notice was sent to 10,874 Settlement Class Members for whom Arvest did not have an email

12   address. *Id.* ¶ 4. Of those, 731 were returned as undeliverable. *Id.* at ¶ 6. New addresses were identified

13   for 573 Settlement Class Members leaving only 158 without postcard notice. Email Notice was sent to

14   37,184 Settlement Class Members for whom Arvest provided a last-known email address. *Id.* at ¶ 3.

15   Five thousand five hundred and seventy three email notices were returned as undeliverable and were

16   subsequently sent Post Card Notices. *Id.* at ¶ 5.

17       The Court-approved notices informed Class Members about the proposed Settlement, their

18   rights as to the $1,474,314 Settlement Amount, their rights to object or opt-out of the Settlement; and

19   the prospective request for attorneys' fees and expenses and service awards. *Id.* at Exs. A, B.

20   **V.    THE LEGAL STANDARD FOR FINAL APPROVAL**

21       The law favors the settlement of class actions. *See, e.g., In re Hyundai and Kia Fuel Economy Litig.*,

22   926 F.3d 539, 556 (9th Cir. 2019) (en banc). "[T]he decision to approve or reject a settlement is

23   committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants and

24   their strategies, positions, and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)

25   (internal citations and quotations omitted). To grant final approval of a settlement, "Fed. R. Civ. P.

26   23(e) requires the district court to determine whether a proposed settlement is fundamentally fair,

27   adequate, and reasonable." *Id.* "It is the settlement taken as a whole, rather than the individual

28

1    component parts, that must be examined for overall fairness." *Id.* In making this assessment, courts

2    must balance several similar factors, including the "*Hanlon*" or "*Churchill*" factors, set forth below.

3          The Court's role in reviewing "what is otherwise a private consensual agreement negotiated

4    between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment

5    that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

6    parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

7    *Officers for Justice v. Civ. Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

8    To "smoke out potential collusion" and determine whether the settlement is "adequate" the Court must

9    "balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class.'" *Briseno v.*

10   *Henderson,* 998 F.3d 1014, 1023-24 (9th Cir. 2021)(quoting Fed. R. Civ. P. 23(e)(2)(c)(iii)). To scrutinize

11   attorney's fee arrangements, district courts should apply the factors established in *In re Bluetooth Headset*

12   *Products Liability Litigation,* 654 F.3d 935 (9th Cir. 2011). *Id.* at 1026. The "red flags" identified in *Bluetooth*

13   that may lead to a determination that the settlement is inadequate are: (1) when class counsel receives

14   "'a disproportionate distribution of the settlement'"; (2) when there is a clear sailing provision "under

15   which the defendant agrees not to challenge a request for an agreed-upon attorney's fee"; and (3) when

16   the settlement contains a reverter allowing unawarded fees to return to the defendant and not the class.

17   *Id.* at 1023 (quoting *Bluetooth,* 654 F.3d at 947). The presence of any of the *Bluetooth* factors does not

18   create "an independent basis for withholding settlement approval." *Id.* at 1027.

19         The proposed Settlement meets the requirements for final approval.

20   **VI.    THE AGREEMENT IS FAIR AND REASONABLE.**

21         **A.    A presumption of fairness applies to the Settlement.**

22          The Settlement is presumptively fair as (1) it is the result of arms' length negotiations, (2) there

23   has been investigation and discovery sufficient to permit counsel and the court to act intelligently, and

24   (3) counsel are experienced in similar litigation. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.

25   2009) (stating that the Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-

26   collusive, negotiated resolution"); *see also id.* at 967 ("Parties represented by competent counsel are better

27   positioned than courts to produce a settlement that fairly reflects each party's expected outcome in

28   litigation."); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004)

("*DIRECTV*") (explaining that class settlements are presumed fair when they are reached "following sufficient discovery and genuine arms-length negotiation"); *Stewart v. Applied Materials, Inc.*, No. 15-cv-02632-JST, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017) (explaining that "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness").

**1.**    The Settlement was negotiated at arm's length.

The Settlement was negotiated at arm's length during an all-day mediation session before Jed M. Melnick of JAMS followed by a week's worth of similarly supervised negotiations. Zavareei Decl. ¶¶ 6, 11-12. *See Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Additionally, the Parties did not discuss attorneys' fees or a Service Award until after they had agreed upon the material terms of the Settlement. Zavareei Decl. ¶ 14. Thus, nothing should disturb the Court's preliminary determination that the proposed Settlement is the product of hard-fought settlement discussions and negotiations between Plaintiffs and Arvest.

**2.**    The Settlement followed extensive investigation and discovery.

Before agreeing upon the terms of the Settlement, the Parties conducted a thorough examination and investigation of the facts and law in this litigation. Class Counsel requested and received written discovery responses from Arvest, examined those documents, and served notice of a 30(b)(6) deposition on Arvest. Zavareei Decl. ¶ 4. In advance of mediation, Arvest also provided informal discovery which included information similar to what Class Counsel would have sought through the formal discovery process. The informal discovery included information regarding the size of the Settlement Class and the amount of Pay-to-Pay Fees collected by Arvest during the preceding several years. Zavareei Decl. ¶ 7. Class Counsel also engaged in substantial motion practice, including defending against Arvest's Motion to Dismiss. As a result, Class Counsel is well versed in the novel and complex issues raised in this case.

**3.**    Experienced Class Counsel negotiated the Settlement.

Class Counsel have extensive experience in complex litigation, consumer rights, and other class action litigation. Zavareei Decl. ¶ 27-34, Ex. 2; Feb. 26, 2021 Declaration of James Kauffman, ECF No. 62-3 ("Kauffman Decl.") ¶ 7, Ex. A. Based on their experience, including comparable cases that they

have settled, Class Counsel concluded that the Settlement provides exceptional results for the class while sparing the class from the uncertainties of continued and protracted litigation. Zavareei Decl. ¶ 34.

### B.    The Settlement is Adequate Under *Briseno*.

The Settlement Agreement reached by the parties here is adequate in accordance with *Briseno v. Henderson,* 998 F.3d 1026-28. Namely, it avoids all of the red flags of a class settlement discussed in *Bluetooth*. First, as discussed in more detail in the Plaintiffs' June 15, 2021 Motion for Attorney's Fees, Class Counsel does not receive a disproportionate amount of the Settlement Fund when compared to the benefit to the class. Rather, they seek a fee of one third of the common fund, which is approximately equivalent to their lodestar. *See generally* ECF No. 70. Notably, when considering the $2.5 million dollar value of injunctive relief in this matter, the requested attorneys' fees and costs is only about 12% of the total value of the Settlement to the Class. Second, there is no clear sailing provision. Third, under no circumstances will any of the Settlement Fund revert back to Arvest. None of the factors that might prevent this court from finding that the Settlement is adequate under *Briseno* are present.

### C.    Additional criteria favor approval of the Settlement.

Although there is an initial presumption of fairness, the Court must independently analyze the Settlement to determine whether it is in the best interests of the class, considering:

> [t]he strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Lane v. Facebook, Inc.,* 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon,* 150 F.3d at 1026). Each of these factors weighs in favor of finally approving the Settlement.

#### 1.    The Settlement provides substantial relief to the Class.

The Settlement provides substantial monetary and injunctive relief to the Class. Plaintiffs secured a common fund of $1,474,314 which constitutes approximately 49.7% of the total $2,966,198 Pay-to-Pay Fees the Settlement Class paid to Defendant during the Class Period. Agreement ¶ II.S. Each of the 48,058 Settlement Class Members are entitled to receive monetary benefits from the Net

1    Settlement Fund on a pro rata basis, based upon the amount of Pay-to-Pay Fees paid by each Settlement

2    Class Member during the Class Period. Agreement ¶ IV.B.

3          Plaintiffs secured injunctive relief as well. As of January 1, 2021, Arvest has ceased charging or

4    collecting Pay-to-Pay Fees to any Settlement Class Member and to any borrower in California, Florida,

5    and Texas. Arvest has also agreed to refrain from the charging or collecting Pay-to-Pay Fees from

6    borrowers in California, Florida, and Texas for a period of at least three years after entry of the Final

7    Approval Order. Arvest collected an average of approximately $820,000 a year from settlement Class

8    Members, and thus, injunctive relief is significant for Settlement Class Members because it may result

9    in $2.5 million or more in savings over the next three years.

10         Thus, the Settlement provides substantial monetary and injunctive relief to the Class.

11              **2.**    <u>The Settlement eliminates the risk of no recovery.</u>

12         While the Settlement in this case would provide benefits to the class that are certain, if Plaintiffs

13   continued to litigate this case, the class would likely not see any recovery for several more years, and

14   there is a risk that there would never be any recovery at all. The potential risks and duration of further

15   litigation therefore support final approval. Courts have long recognized the inherent risks and "vagaries

16   of litigation," and emphasized the comparative benefits of "immediate recovery by way of the

17   compromise to the mere possibility of relief in the future, after protracted and expensive litigation."

18   *DIRECTV*, 221 F.R.D. at 526; *see also In re Anthem, Inc. Data Breach Litig.,* 327 F.R.D. 299, 318 (N.D.

19   Cal. 2018) (delay in recovery as a result of trial and appellate proceedings weighs in favor of final

20   approval where "[s]ettlement provides the Class with timely, certain, and meaningful recovery").

21         Here, Plaintiffs face substantial risks. Indeed, shortly after this settlement was reached, several

22   plaintiffs filed an appeal with the Ninth Circuit over a district court's decision to dismiss these claims

23   in full. *See Thomas-Lawson v. Carrington Mortg. Servs., LLC*, No. 220CV07301ODWEX, 2021 WL 1253578

24   (C.D. Cal. Apr. 5, 2021) (granting motion to dismiss), *appeal filed*, Case No. 21-55459 (9th Cir.).[5] A

---

25   [5] While the majority of courts are in accord with this Court, *Thomas-Lawson* is not the only divergent
26   case, and thus, there is no guarantee on how the Ninth Circuit will rule. *See, e.g., Lish v. Amerihome
     Mortg. Co.*, No. 220-CV_07147JFWJPRX, 2020 WL 6688597, at *4 (C.D. Cal. Nov. 10, 2020) (finding
27   no Rosenthal Act violation where "Defendant simply offered Plaintiff the option to pay by telephone
     for a fee and Plaintiff opted to take advantage of the optional convenience and incur the charge for
28

---

1    similar matter was also appealed to the Fourth Circuit, which increases the possibility of a circuit split

2    and Supreme Court review. While this Court found in favor of the plaintiff at the motion to dismiss

3    stage, one of the threshold legal issues is in flux. While Plaintiffs believe that their view of the law will

4    ultimately be endorsed by appellate courts, to get there, this case could have been stayed and taken years

5    to achieve full recovery.  By settling now in the early stages, this risk as well as the risks and costs

6    associated with expert discovery and litigating additional dispositive motions and a motion for class

7    certification can be avoided. Zavareei Decl. ¶¶ 16, 22.

8        Moreover, because the underlying cases would proceed in three separate courts, there would

9    likely be duplication of effort and consumption of the Parties' and the court system's resources and

10    time. The Parties would need to resolve discovery disputes and incur the expense and burden of

11    preparing for trial. Even if Plaintiffs in all three underlying cases succeed at class certification and the

12    merits, any recovery would likely be delayed by appeals. Yet there is no guarantee that lengthy litigation

13    and expensive discovery would lead to greater benefits for the Settlement Class Members. *Id.* Instead,

14    there would be multiple points at which the Class's claims could be narrowed or dismissed. *Id.* ¶ 16.

15    Thus, the Settlement eliminates the various risks including complete lack of recovery which is possible

16    with further litigation.

17        **3.**    The Settlement compares favorably to potential relief.

18        A proposed settlement is not to be measured against "a hypothetical or speculative measure of

19    what might have been achieved." *Officers for Justice*, 688 F.2d at 625; *see also DIRECTV*, 221 F.R.D. at

20    527 ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to

21    only a fraction of the potential recovery that might be available to the class members at trial."); *Custom*

22    *LED, LLC v. eBay, Inc.,* No. 12-cv-00350-JST, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014)

23    ("[C]ourts have held that a recovery of only 3% of the maximum potential recovery is fair and

24    reasonable . . . .").

25

26    _____

27    doing so."); *Flores v. Collection Consultants of Cal.*, No. SA CV 14-0771-DOC (RNBx), 2015 WL
4254032, at *10 (C.D. Cal. Mar. 20, 2015) (finding a convenience fee charge was not "incidental to the
principal obligation" because a consumer must "choose to affirmatively and separately opt in to" the

28    alternative payment method).

Here, besides its substantial size in absolute numbers, the Settlement is fair and reasonable in relation to the Settlement Class's potential damages. After Court-approved fees, costs, and service awards, and the costs of notice are deducted from the $1,474,314 Common Fund, approximately $872,926 will be distributed to Settlement Class Members. These benefits are substantial: 49.7% of damages is significantly higher than the percentage of damages achieved in settlements of similar cases, and this settlement involves significant injunctive relief. *See Sanders v. LoanCare, LLC,* 2:18-cv-09376-SJO (RAOx0)(C.D.Cal.)(finally approving settlement where class received only 38.64% of actual damages).

As discussed above, the Settlement will also collectively save class members millions of dollars in charges, through the sweeping injunctive relief. Plaintiffs estimate that if Defendant continued to charge Pay-to-Pay fees during the three year injunctive relief period, it would cost the Class Members approximately $2.5 million dollars. As a result of this Settlement, Class Members will not be charged any Pay-to-Pay Fees for the next three years and will receive nearly 50% of any Pay-to-Pay they incurred during the class period returned to them. This Settlement guarantees that all class members will receive direct financial relief and/or benefit from the comprehensive financial and non-financial injunctive relief. Accordingly, this factor favors final approval.

**4.** <u>The Settlement enjoys overwhelming class support.</u>

In determining the fairness of a settlement, the Court should consider class member objections. The absence of a large number of objections to a proposed settlement raises a strong presumption that the terms of the agreement are fair. *See, e.g., Churchill Vill., L.L.C. v. General Electric,* 361 F.3d 566, 577 (9th Cir. 2004) (approving a settlement where "only 45 of the approximately 90,000 [.005 percent] notified class members objected to the settlement"). As of the end of the opt-out and objection deadline on January 6, 2021 none of the 48,058 Class Members opted out of or objected to the settlement. Perry Decl. ¶¶ 9, 13. Indeed, the lack of any opt-outs or objections from class members who received notice indicates overwhelming favor from the Class.

This support is particularly notable given that over 197 class members contacted the Settlement Administrator directly via telephone, with over 1,740 unique visitors to the Settlement Website. *Id.* ¶¶ 14, 16. The lack of opt-outs when paired with the response rate, also indicate a favorable reaction by

the class members to the proposed Settlement and provide further support for final approval. *See, e.g.,*

*Perkins v. Linkedin Corp.*, No. 5:13-cv-04303-LHK, 2016 U.S. Dist. LEXIS 18649, at *9 (N.D. Cal. Feb.

16, 2016) ("low rates of objections and opt-outs are 'indicia of the approval of the class'") (citation

omitted); *In re: Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (low number of objectors (a

"handful") and opt-outs (only one) supported trial court's finding that settlement was "fair, adequate

and reasonable"); *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998) (upholding approval of settlement where

only 971 Class Members, or 0.1% of the class, opted out and only a few objected); *De Leon v. Ricoh

USA, Inc.*, No. 18-cv-03725-JSC, 2020 U.S. Dist. LEXIS 56285, at *34 (N.D. Cal. Mar. 31, 2020)

("Courts have repeatedly recognized that the absence of a large number of objections to a proposed

class action settlement raises a strong presumption that the terms of a proposed class settlement action

are favorable to the Class Members." (internal quotation marks and citation omitted)). Additionally,

because there were no objectors, objections cannot weigh against final approval.

### D.    Any *Cy Pres* Award Will Benefit the Class.

The proposed *Cy Pres* recipient, NeighborWorks America, will benefit the class and should be

finally approved. Courts "may employ the *cy pres* doctrine to 'put the unclaimed fund to its next best

compensation use, *e.g.*, for the aggregate, indirect, prospective benefit of the class.'" *Nachsin v. AOL,

LLC,* 663 F.3d 1034, 1038 (9th Cir. 2011) (citing *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423,

436 (2d Cir. 2007)). Under Ninth Circuit precedent a *cy pres* award must "bear[] a substantial nexus to

the interests of class members." *Lane v. Facebook,* 696 F. 3d 811, 821 (9th Cir. 2012) *cert denied,* 134 S. Ct.

8 (U.S. 2013). Courts look to the factors set forth in *Six (6) Mexican Workers v. Arizona Citrus Growers,*

904 F.2d 1301, 1305 (9th Cir. 1990) to assess the *cy pres* component of a class action settlement.

Specifically, the *cy pres* remedy "must account for the nature of the plaintiffs' lawsuit, the objectives of

the underlying statutes, and the interests of the silent class members. . . ." *Nachsin v. AOL*, 663 F.3d at

1036 (citing *Six Mexican Workers,* 904 F.2d at 1307).

If there is any money remaining in the Settlement Fund after settlement distribution, the *cy pres*

plan is to distribute the remainder to NeighborWorks America upon approval by the court.

NeighborWorks America is a 501(c)(3) charitable organization that works with nonprofits nationwide

on housing issues. One of its missions is to promote financial health and to ensure homeowners have

access to information to make smart, financial decisions, which helps to ensure they can pay their mortgages and remain in their homes. *See* https://www.neighborworks.org/Homes-Finances/Financial-Health. Because Pay-to-Pay fees are more likely to be paid by homeowners who live on fixed budgets or have other circumstances that cause them to need more control over the timing of their mortgage payments than payment by mail or automatic debits would allow, NeighborWorks' mission is aligned with the objectives of the litigation and the Settlement Class Members' interests and will serve to benefit Class Members. In no event shall any remaining funds return to Arvest.

## VII.   THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The Parties agreed to certification of the Settlement Class, the Court conditionally certified it, and the Court should now certify it at final approval. The Settlement Class is numerous, indeed tens of thousands of consumers received notice in this case. There are common issues concerning the issues related to Arvest's practices and policies that predominate over individual issues. Plaintiffs are typical of the class because their claims arise from the same course of Arvest's alleged conduct: charging borrowers a fee to make payments not authorized by borrowers' mortgages or permitted by law. Moreover, there is one Plaintiff from each state included in the Settlement Class. Plaintiffs have no conflicts with the class and participated in this action and are adequate. Plaintiffs' Counsel are experienced and adequate. Finally, class treatment is superior because the Parties agreed to certification of the Settlement Class (Settlement Agreement ¶ III), the Court conditionally certified it, and the Court should now certify it at final approval.

## VIII.  CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court (1) grant this Motion, (2) finally approve the proposed Settlement, (3) affirm the certification of the Settlement Class for settlement purposes only, (4) affirm the appointment of Valerie Lembeck, Andrew Miller, and Robert Lange as Class Representatives, (5) affirm the appointment Hassan A. Zavareei and Kristen G. Simplicio of Tycko & Zavareei LLP and James L. Kauffman of Bailey Glasser LLP as Class Counsel, (6) retain jurisdiction over this matter to resolve issues related to interpretation, administration, implementation, effectuation, and enforcement of the Settlement, and (7) enter Final Judgment dismissing this action. By the separate motion filed on June 15, 2021, Plaintiffs also request that the

1   Court grant service awards of $5,000 to each of the three Class Representatives, and award Class

2   Counsel reasonable attorneys' fees and expenses in the amount of $491,388, as set forth in the

3   Settlement.

4   Dated: July 29, 2021                              Respectfully submitted,

5                                                     */s/ Hassan A. Zavareei*

6                                                     Hassan A. Zavareei (SBN 181547)
                                                      Kristen G. Simplicio (SBN 263291)

7                                                     **TYCKO & ZAVAREEI LLP**
                                                      1828 L Street NW, Suite 1000

8                                                     Washington, D.C. 20036
                                                      Telephone: 202-973-0900

9                                                     Facsimile: 202-973-0950
                                                      hzavareei@tzlegal.com

10                                                    ksimplicio@tzlegal.com

11                                                    Todd Walburg (SBN 213063)

12                                                    **BAILEY & GLASSER LL**P
                                                      1999 Harrison St., Suite 660

13                                                    Oakland, CA 94612
                                                      Telephone: (510) 207-8633

14                                                    Facsimile: (510) 463-0291
                                                      twalburg@baileyglasser.com

15

16                                                    James L. Kauffman
                                                      **BAILEY & GLASSER LLP**

17                                                    1055 Thomas Jefferson Street, NW
                                                      Washington, D.C. 20007

18                                                    Telephone: (202) 463-2101
                                                      Facsimile: (202) 463-2103

19                                                    jkauffman@baileyglasser.com

20                                                    *Attorneys for Plaintiffs*

21

22

23

24

25

26

27

28