UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

**VALERIE LEMBECK, ROBERT LANGE, and ANDREW MILLER**, *on behalf of themselves and all others similarly situated,*

Plaintiff,

v.

**ARVEST CENTRAL MORTGAGE CO.,**

Defendant.

Case No. 3:20-cv-03277-VC

**~~[PROPOSED]~~ ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AS MODIFIED**

Date: August 12, 2021
Time: 10:00 a.m.
Courtroom:
Judge: Vince Chhabria

Date Filed: May 14, 2020
Trial Date: None set

Plaintiffs Valerie Lembeck, Andrew Miller, and Robert Lange, individually and on behalf of the proposed Settlement Class,[1] seek final approval of a proposed Settlement of claims against defendant Arvest Central Mortgage Company ("Arvest"). For the reasons set forth herein, the Court GRANTS the motion.

## I. BACKGROUND

Plaintiffs commenced separate actions in California, Florida, and Texas, respectively. Plaintiff Lembeck initiated a class action lawsuit in this Court, alleging that Arvest violated California's Rosenthal Fair Debt Collections Act ("Rosenthal Act") and Unfair Competition Law ("UCL"). *See* Compl., Dkt. 1. Plaintiff Miller initiated a class action currently pending in state court in Florida against Arvest, alleging violations of the Florida Consumer Collection Practices Act ("FCCPA") and the Florida Deceptive Unfair Trade Practices Act ("FDUTPA"). *Andrew Miller v. Arvest Central Mortgage Co.*, No. 20-010342-CA-01 (Fla. Cir. Ct., Miami-Dade Cty.). And Plaintiff Lange initiated a class action in the Eastern District of Arkansas against Arvest, alleging violations of the Texas Debt Collection Act ("TDCA"). *Robert Lange v. Arvest Central Mortgage Co.*, No. 4:20-cv-293-LPR (E.D. Ark.). Although the three putative class actions were brought separately, each is based on one allegation: Arvest charged and collected millions of dollars in $5 and $10 Pay-to-Pay Fees from homeowners, in addition to their regular mortgage payments, and Plaintiffs allege that this practice violated the laws of California, Florida, and Texas, and breached their mortgage agreements. Arvest denies the allegations in the complaints and denies any wrongdoing.

Before this Court, Arvest moved to dismiss the complaint filed by Plaintiff Lembeck, Plaintiff Lembeck opposed, and the Court held a hearing on October 22, 2020. *See* Dkts. 24, 39, 45-46. On November 3, 2020, the Court issued an order granting in part and denying in part the motion, permitting all but one of Plaintiff Lembeck's claims to proceed. *See* Dkt. 47. In the *Lange* matter, Arvest moved to dismiss the Complaint and Plaintiff Lange opposed. *See Lange* Dkts. 13, 16, 19. The *Lange* court has not

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the parties' Settlement Agreement, attached as Exhibit 1 to the Declaration of Hassan A. Zavareei ("Zavareei Decl.").

ruled. *See Lange* Dkt. 35. In the *Miller* matter, Arvest removed the case to federal court and moved to dismiss. Plaintiff Miller moved to remand and opposed the motion to dismiss. The *Miller* court remanded the case to state court on December 18, 2020. After the Parties reached the proposed Settlement, the Parties agreed that, to preserve the resources of the Parties and the Court, Plaintiffs' claims should be consolidated and a single Settlement Agreement considered and approved by one Court, rather than proceeding piecemeal. Thus, in advance of this Motion, the Plaintiffs filed the current operative Amended Complaint consolidating their claims before this Court and notified the *Lange* and *Miller* courts of the pending Settlement.

The proposed Settlement was negotiated during a full-day mediation before an experienced mediator, Jed. D. Melnick of JAMS. In advance of that mediation, Arvest provided Plaintiffs with informal discovery demonstrating the size of the Settlement Class and the amount of damages in issue. Following the mediations, the Parties continued to negotiate the details of the Settlement, before arriving at the Settlement Agreement currently before the Court.

## II.     SETTLEMENT TERMS

### A.     The Proposed Settlement Class

The Settlement Agreement contemplates certification of the following Settlement Class for settlement purposes only:

> All persons who (1) were borrowers on residential mortgage loans on properties located in Florida, Texas, or California to which Arvest acquired servicing rights, and (2) paid a fee to Arvest for making a loan payment by telephone, IVR, or the internet, between January 1, 2017 and December 31, 2020.

The proposed Settlement Class is identical to the class definition included in the Amended Complaint.

### B.     Benefits to the Settlement Class

The Settlement Agreement, if approved, will create a $1,474,314 common fund and will resolve the claims of Plaintiffs and the Settlement Class Members deriving from Arvest's practice of charging fees for making mortgage payments online, over the phone, or IVR ("Pay-to-Pay Fees"). The common fund, which represents approximately 49.7% of damages, will provide cash payments to Settlement Class Members, as well as Administrative Costs to provide notice and administer the settlement, and any Fee

and Expense Award and Service Awards that this Court approves. Settlement Class Members need not submit a claim form in order to receive monetary compensation *pro rata* according to the amount of Pay-to-Pay Fees they were charged. As of January 1, 2021, Defendant has ceased charging or collecting Pay-to-Pay Fees to any Settlement Class Member and to any borrower in California, Florida, and Texas. As a result of this Settlement, Defendant agrees to refrain from the charging or collection of Pay-to-Pay Fees from borrowers in California, Florida, and Texas for a period of at least three years after entry of the Final Approval Order.[2]

**C. Settlement Administrator and Administration Costs**

The proposed Settlement Administrator is KCC Class Action Services, LLC ("KCC"), a leading class action settlement administration firm in the United States. The Parties reviewed proposals from three prominent settlement administrators before deciding on KCC based on overall cost and value to the Settlement Class. The Administrative Costs will be paid from the Gross Settlement Fund.

**D. Class Member Release**

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released the Released Entities from all claims that were or could have been asserted by the Class Representatives or Settlement Class Members arising out of, based upon, or related in any way to the charging, collection, or attempted collection of Pay-to-Pay Fees from the beginning of the world to the Effective Date, which the Settlement Class Member ever had or may have in the future.

**E. Notice to the Settlement Class**

Notice was sent to Settlement Class members pursuant to the Settlement Agreement and the Court's Order granting preliminary approval. The Class Notice consisted of direct notice in the form of Postcard Notice and Email Notice, as well as a Settlement Website where Class Members could view and request to be sent the Long Form Notice. The Class Notice adequately described the litigation and the Settlement Agreement and the procedures to opt out and object. The Notices further explained the

---

[2] Arvest has also ceased charging Pay-to-Pay Fees in the rest of the country.

amount of the Settlement, the plan of allocation, Class Counsel's intent to apply for an award of attorneys' fees and expenses (and in what amount), and that the Class Representatives would apply for Service Awards. Notice was also provided to any state and federal officers as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

**F. Attorneys' Fees and Costs and Service Award**

The Settlement Agreement contemplates Class Counsel petitioning the Court for attorneys' fees, as well as documented, customary costs incurred by Class Counsel. The Settlement Agreement provides that Class Counsel may seek attorneys' fees in an amount not to exceed one third of the Gross Settlement Fund (33.33%) as well as reasonable expenses incurred in the litigation. Any approved Fee and Expense Award will be paid from the Gross Settlement Fund prior to distribution to the Settlement Class Members. The Settlement Agreement also authorizes Class Counsel to petition the Court for up to $5,000 each for Valerie Lembeck, Andrew Miller, and Robert Lange as Service Awards as compensation for their time and effort in the Action. Any approved awards will be deduced from the Gross Settlement Fund prior to distribution to the Settlement Class Members. Neither final approval, nor the size of the Common Fund, are contingent upon approval of the full amount of requested Fee and Expense Award or Service Awards.

## III. LEGAL STANDARD FOR FINAL APPROVAL

The Ninth Circuit has a strong judicial policy favoring the settlement of class actions. *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1269, 1276 (9th Cir. 1992). The settlement of complex cases greatly contributes to the efficient utilization of scarce judicial resources and achieves the speedy provision of justice. Federal Rule of Civil Procedure 23 requires court approval of a class action settlement, a decision that is committed to the sound discretion of the trial judge. Fed. R. Civ. P. 23(e). *See also In re Mego Fin. Corp.*, 213 F.3d 454, 458 (9th Cir. 2000) (recognizing that the trial judge is "exposed to the litigants, and their strategies, positions, and proof").

Courts in the Ninth Circuit consider specific factors when approving a settlement. *See e.g.*, *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 964 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *Avina*, 2019 WL 8163642, at *5. These factors include: (1) the

strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *See Churchill Vill.,* 361 F.3d at 575; *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998). Rule 23, as amended in 2018, provides additional guidance to federal courts considering whether to grant preliminary approval of a class action settlement. *See* Fed. R. Civ. P. 23(e)3. Those factors include whether: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided is adequate; and (D) whether the proposed settlement treats class members equitably relative to each other.

When approving a class settlement, Courts in the Ninth Circuit must also assess whether the settlement is adequate for class members by weighing the proposed attorney's fees against the relief provided to the class. *Briseno v. Henderson,* 998 F.3d 1014, 1023-24 (9th Cir. 2001)(quoting Fed. R. Civ. P. 23(e)(2)(c)(iii)). To make this assessment, the court assesses whether any of the "red flags" established in *In re Bluetooth Headset Products Liability Litigation,* 654 F.3d 935 (9th Cir. 2011), are present: (1) class counsel receives "'a disproportionate distribution of the settlement'"; (2) there is a clear sailing provision "under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee"; and (3) the settlement contains a reverter allowing unawarded fees to return to the defendant and not the class. *Id.* at 1023 (quoting *Bluetooth,* 654 F.3d at 947).

## IV. FINDINGS AND ORDERS

The Court finds that the Settlement Agreement is fair, reasonable, and adequate and warrants final approval.

1. The Court finds that the Settlement was negotiated at arm's length before an experienced mediator and between experienced and sophisticated counsel. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-05248-MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007). *See also Cohorst v. BRE Props.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011) ("[V]oluntary mediation

before a retired judge in which the parties reached an agreement-in-principle to settle the claims in the litigation are highly indicative of fairness."). The Ninth Circuit puts "a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. West Pub'lg Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see* Fed. R. Civ. P. 23(e)(2)(B). Based on the vigorous litigation of the issues, the exchange of informal discovery, and the rigorous negotiations before Mr. Melnick described in Plaintiffs' submission, the Court finds that the Settlement was negotiated at arms' length and under circumstances evidencing a lack of collusion. This conclusion is furthered by the fact that it appears the factors under *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) are satisfied.

2. The Court finds that the Settlement is fair, reasonable, and adequate when balanced against the probable outcome of further litigation, liability, and damages issues, and potential appeals of rulings. The amount offered in Settlement represents 49.7% of damages, as well as significant injunctive relief. Plaintiffs' motion describes the legal issues that would be decided before this Court and before the *Lange* and *Miller* courts should the settlement not be approved, both on the merits and at class certification. While litigation presents serious risks at many stages, not to mention substantial expense and delay without any guarantee of additional benefit to the Settlement Class, the Settlement provides immediate and substantial benefits to over 48,000 Settlement Class Members. Further, continued litigation would likely take several years to resolve and involve expensive discovery. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). The Court also affords substantial weight to the views of Class Counsel, who support the Settlement.

3. The Court finds that early resolution of this Action will conserve the resources of the Parties and the Court, while at the same time, the Parties have vigorously litigated the legal issues and Arvest provided sufficient informal discovery to permit Class Counsel and the Court to intelligently evaluate the Settlement offered against the risks and benefits of continued litigation.

3. The Court finds that the Parties' proposed allocation of the Settlement is fair and reasonable. Payments will be made on a *pro rata* basis depending on the number of Pay-to-Pay Fees each Settlement Class Member paid. According to this allocation, Class Members are treated fairly as to one another because they are compensated according to the amount of Pay-to-Pay Fees they were charged. *See* Fed. R. Civ. P. 23(e)(2)(D). This method is consistent with the distribution of common funds in other fee cases. *See, e.g.*, *Lloyd v. Navy Federal Credit Union*, No. 17-cv-1280-BAS-RBB, 2018 WL 2269958, at *3 (S.D. Cal. May 28, 2019) (approving settlement from which class members would receive *pro rata* distribution of common fund based on number of fees paid); *Walters v. Target Corp.*, No. 3:16-cv-1678-L-MDD, 2019 WL 6696192, at * (S.D. Cal. Dec. 6, 2019) (same). A *pro rata* distribution means that Settlement Class Members who paid more Pay-to-Pay Fees will receive a relatively larger share of the Net Settlement Fund, and those who paid fewer will receive less. This allocation treats Settlement Class Members equitably.

4. The Court finds that the Class Representatives and Class Counsel have adequately represented the proposed Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(A). Class Counsel are experienced and sophisticated, with years of experience in complex class action litigation and litigation involving mortgage servicers, financial institutions, and fees. The Class Representatives have also supervised the litigation by reviewing pleadings, reviewing the Settlement, and communicating with Class Counsel regarding the litigation. Prior to their final approval motion, the Class Representatives submitted declarations detailing their involvement in the litigation.

5. For the reasons discussed on the record, the Court finds that a fee award of no greater than 25% of the settlement fund is appropriate.

6. Class Counsel are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover

reasonable expenses that would typically be billed to paying clients in non-contingency matters.); *Van Vranken*, 901 F. Supp. at 299 (approving reasonable costs in class action settlement). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, class counsel seeks reimbursement of $16,148.45 in litigation expenses, which includes the cost of a private mediator. They have provided records that document their claim. See Simplicio Decl. ¶29; Kauffman Decl. ¶ 29. The court therefore finds that these submissions support an award of $16,148.45 in costs.

7. The district court must evaluate named plaintiffs' payments individually, using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit recently emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013). Here, the Plaintiffs came forward to represent the interests of thousands of others, with very little personally to gain, as their individual alleged damages were very small. Before and during litigation, Plaintiffs had their highly sensitive financial information regarding their mortgage agreements inspected. Plaintiffs participated in the litigation by reviewing the complaint and other filings and making themselves available to assist with discovery. And Plaintiffs all worked with counsel to initiate separate cases in their home states, taking the substantial risk they might, at a minimum, lose their case and pay the other side's costs. Thus, the Court approves a $3,000 award each for Ms. Lembeck, Mr. Lange, and Mr. Miller.

8. The Court finds that the settlement itself avoids the issues identified by the Ninth Circuit in *Briseno*, and is adequate for class members when the proposed attorneys' fees are compared against relief provided for the class. Class Counsel are not receiving a disproportionate amount of the Settlement,

there is no clear sailing provision, and no part of the Settlement Fund reverts to the Defendant. There is no evidence that Class Counsel colluded with Defendants to prioritize the interests of the attorneys in this matter over those of the class. And the injunctive relief here appears to have real value.

9. The Court confirms the certification for settlement purposes of the Settlement Class.

10. The Court confirms the appointment of Valerie Lembeck, Robert Lange, and Andrew Miller as Class Representatives.

11. The Court confirms the appointment of Hassan A. Zavareei and Kristen G. Simplicio of Tycko & Zavareei LLP, and James L. Kauffman of Bailey & Glasser LLP, as Class Counsel.

12. The Court finds that a 10% withholding of the distribution of attorneys' fees and costs is appropriate until after Plaintiffs' counsel has filed a Post-Distribution Accounting in Accordance with the Northern District of California's Procedural Guidance for Class Action Settlements. In this matter, withholding 10% of fees is reasonable given Class Counsel's experience and the relatively small dollar value of the Settlement Fund.

13. The Court finds that the approved Class Notice constituted the best notice practicable under the circumstances and was in full compliance with the applicable laws and the requirements of due process. The Court further finds that the Class Notice fully and accurately informed the Settlement Class Members of all material elements of the proposed Settlement, of their right to be excluded from the Settlement, and of their right and opportunity to object to the Settlement. The Court also finds that the Class Notice complied with the Class Action Fairness Act, 28 U.S.C. § 1715.

14. All timely objections have been considered and are overruled.

15. All members of the Settlement Class who timely requested exclusion are excluded from the Settlement.

16. The Court confirms the *cy pres* recipient as NeighborWorks America.

17. All Settlement Class Members who did not timely request exclusion are hereby bound by the terms of the Settlement Agreement, including the release.

Accordingly, the Court having considered the Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of the Settlement Class, it is hereby ORDERED that:

1. The Motion is GRANTED;

2. The proposed Settlement is approved as being fair, reasonable, and adequate pursuant to Rule 23(e);

3. Valerie Lembeck, Andrew Miller, and Robert Lange are confirmed as Class Representatives;

4. Hassan A. Zavareei, Kristen G. Simplicio, and James L. Kauffman are confirmed as Class Counsel;

5. The Court awards $368,578.50 in attorneys' fees and $16,148.44 in reimbursed costs to Class Counsel;

6. The Court approves Service Awards to Valerie Lembeck, Robert Lange, and Andrew Miller of $3,000 each;

7. Without affecting the finality of the Court's judgment in any way, the Court retains jurisdiction over this matter for purposes of resolving issues related to interpretation, administration, implementation, effectuation, and enforcement of the Settlement;

8. Within 21 days after the distribution of settlement funds and payment of any award of attorneys' fees, the Parties are ordered to file a Post-Distribution Accounting in accordance with the Northern District of California Procedural Guidance for Class Action Settlements and post the Post-Distribution Accounting to the Settlement Website;

9. Ten percent (10%) if the Attorneys Fees and Costs shall be withheld and not distributed to Class Counsel until after the Post-Distribution Accounting is filed, upon further order of this Court;

10. Based on the foregoing, the Court sets the following schedule:

| | |
|---|---|
| Settlement Effective Date | September 27, 2021 |
| Settlement Administrator shall calculate the Net Settlement Fund | September 10, 2021 |
| Settlement Administrator shall pay by wire any Fee and Expense Award (less the 10% withholding) and Service Awards approved by Court | October 4, 2021 |

| | |
|---|---|
| Settlement Administrator shall send Class Counsel final list of each Settlement Class Member, their percentage of the Net Settlement Fund, and their payment amount | October 11, 2021 |
| Settlement Administrator shall email Class Members allowing them to select digital payment method and informing them if they do not, their payment will be received via check | October 11, 2021 |
| Settlement Administrator shall effectuate payments for Class Members who selected digital payment option and mail checks to Class Members who did not select the digital payment option | October 27, 2021 |
| Settlement Administrator shall void individual, uncashed checks | January 25, 2022 |
| Settlement Administrator shall effectuate a secondary distribution or administer remaining funds to NeighborWorks America | April 25, 2022 |
| Class Counsel shall file a Post-Distribution Accounting and place it on the Settlement Website and proposed order regarding the release of the balance of attorneys' fees and costs | May 16, 2022 |
| Settlement Administrator shall pay by wire balance of attorneys' fees and costs | By order of the Court following the Post-Distribution Accounting |

11. This Action is **DISMISSED WITH PREJUDICE**,

**IT IS SO ORDERED.**

Dated: 08/26/2021

Hon. Vince Chhabria

United States District Judge